## PAULSON v. MUSKEGON HEIGHTS TILE COMPANY.

1. Workmen's Compensation—Discretion of Appeal Board—Delayed Appeal.

The workmen's compensation appeal board did not abuse its discretion in granting plaintiff's motion for delayed appeal from stipulated dismissal of defendant employer and its insurer where the delayed appeal had been sought during pendency of certain cases theretofore submitted to Supreme Court which had a bearing upon plaintiff's claim.

2. Same—Loss of Use of Legs—Permanent and Total Disability.

A leg-connected disabling pain, associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible constitutes a total and permanent disability for which the employer and its insurer are liable for workmen's compensation for the duration of such disability, notwithstanding there has been no direct injury to the legs (CLS 1956, § 412.9 et seq.).

---

References for Points in Headnotes

[1] 58 Am Jur, Workmen's Compensation §§ 514, 515, 526.
[2] 58 Am Jur, Workmen's Compensation §§ 287–289, 292, 293.
  Workmen's compensation: right to compensation as for a total or partial disability in case of abnormal condition of body or member which results from or is incident to specific injury for which the act makes special allowance. 156 ALR 1344.
[3] 58 Am Jur, Workmen's Compensation §§ 287–289, 292, 293, 532.

3. SAME—LOSS OF USE OF BOTH LEGS—PERMANENT AND TOTAL DIS-
ABILITY.

> Finding of workmen's compensation appeal board that plaintiff
> employee who had suffered a punctured bladder and fractured
> pelvis in the course of his employment in 1949 and had worked
> intermittently thereafter as conditions would permit, and gran-
> uloma developed necessitating additional surgery in 1957, that
> plaintiff was entitled to compensation from the defendant-
> employer and its insurer for the duration of the permanent
> and total disability from the loss of the industrial use of
> both of his legs *held*, sustained by the evidence and con-
> clusive (CLS 1956, § 412.9 *et seq.*; CL 1948, § 413.12).

Appeal from Workmen's Compensation Appeal
Board. Submitted November 9, 1962. (Calendar
No. 76, Docket No. 49,560.) Decided October 10,
1963.

Guy G. Paulson, following voluntary payment of
workmen's compensation, presented his claim
against Muskegon Heights Tile Company, employer,
and Indemnity Insurance Company, insurer, and
against the State of Michigan, Second Injury Fund,
for additional benefits by reason of subsequent de-
velopments resulting in loss of use of legs. Award
only against employer and insurer, who appeal. Af-
firmed.

*Marcus, McCroskey, Finucan & Libner* (*Robert
Libner*, of counsel), for plaintiff.

*Cholette, Perkins & Buchanan* (*Edward D. Wells*,
of counsel), for defendants.

SMITH, J. On June 17, 1949, plaintiff was seri-
ously injured in an automobile accident sustained
in the course of his employment. Among other in-
juries, he suffered a punctured bladder and a frac-
tured pelvis. In uncontested proceedings he was
awarded compensation benefits for the period from

June 18, 1949, through January 16, 1959, a period of 500 weeks after injury. However, actual benefits were paid for only 193 weeks of this period, plaintiff supporting himself for the remainder of the time through his earnings as a tile setter.

On March 5, 1959, plaintiff filed an application for an adjustment of his claim against defendant for "permanent and total disability benefits beyond the 500-week period", and also against the second injury fund[1] for differential benefits. Testimony disclosed that plaintiff experienced extreme pain in the lower abdomen at the base of the penis resulting from a tear in the urinary tract system permitting urine to escape into surrounding tissues. It appears that plaintiff was given medical treatment for various maladies growing out of his injuries at regular intervals from August, 1949, through July, 1953. In November, 1957, plaintiff suffered such intense pain from a granuloma (growth of abnormal tissue stimulated by irritating substances) at the base of the penis that surgery was performed to remove this growth. During this operation, plaintiff was found to suffer constant urine drainage from the bladder through sinus tracts in this area of his body.

The treating physician testified as follows:

"*A.* His disability results from the presence of the fistulous tract, the fistulous sinus, with pain resulting from any pressure *being borne by either leg, especially his right leg,* so that even walking after a period of time or for short distances of a half a block will prevent him or cause him to stop and rest, shifting his weight primarily to the left side, to the left leg." (Emphasis supplied.)

Plaintiff testified that he cannot walk very far before his right leg becomes numb, causing him to stop and rest. The physician testified further:

---

[1] See CL 1948, § 412.8a (Stat Ann 1960 Rev § 17.158[1]).—REPORTER.

"*A*. If he is lying quietly, apparently there is no occurrence of pain. On examination on April 13th, there was a suggestion that any weight-bearing on either leg alone caused enough torsion on the joint to give him or cause him pain, apparently because of the presence of a sinus tract which then because of its inflamed nature would further be inflamed by this torsion effect of standing.

"*Q*. Is this man, in your opinion, doctor, able to perform any active type of employment at this time?

"*A*. At the present time, under the present circumstances, no."

The referee entered an award finding that plaintiff was totally and permanently disabled and therefore was entitled to benefits, not exceeding a period of 750 weeks from the date of injury. Another order was entered denying plaintiff's claim for differential payments from the second injury fund "for the reason that he does not come within the class of people defined as permanently and totally disabled." Immediately, plaintiff filed with the appeal board an application for review of the order denying relief against the second injury fund. Likewise, defendant-employer filed an application for a review of the order entered against it; later, however, defendant dismissed its request for review.

In view of a case then pending before this Court, *Verberg* v. *Simplicity Pattern Co.*, 357 Mich 636, posing a similar question, plaintiff's attorneys requested by letter that the appeal board defer consideration until a decision in that case. The decision in *Verberg* was adverse to plaintiff's position at that time. Plaintiff then argued for the first time that he had sustained the loss of industrial use of his 2 legs and therefore was entitled to differential payments. Plaintiff was advised that a majority of the members of the appeal board thought that his claim

for the loss of industrial use of his legs should be asserted against defendant-employer rather than against the second injury fund. Plaintiff then filed application for delayed appeal against defendant-employer. The petition for delayed appeal was grounded upon the effect of this Court's decisions in *Verberg, supra,* and in *Lahti* v. *Fosterling,* 357 Mich. 578, upon plaintiff's claim in this case. The appeal board was asked by plaintiff to rescind its stipulated dismissal of defendant-employer and its insurer, thereby reinstating them as defendants in order to prevent a multiplicity of suits. Defendant tile company and its insurer filed their objections to the petition for delayed appeal. However, the appeal board granted the petition and remanded the case to the hearing referee for the taking of additional testimony. Stipulated into the record was certain evidence of medical expenses incurred by plaintiff, without prejudice, however, to defendants' position on the question of delayed appeal.

The appeal board found that plaintiff had suffered loss of industrial use of both legs and entered an award accordingly. A majority of the board held that the plaintiff was entitled to recover against defendant-employer, with no entitlement of differential payments from the second injury fund. One member of the board dissented, finding no loss of industrial use within the meaning of the act. Upon application by defendant-employer and insurer, leave to appeal was granted by this Court.

### 1. *Discretion in granting late appeal.*

Appellants contend that the appeal board had no authority to grant plaintiff delayed appeal. Between members of the appeal board there was a difference of opinion as to whether permission for delayed appeal was necessary: 2 members contending that there was, and a third member claiming that jurisdic-

tion over the entire matter and the parties thereto
was retained by the appeal board until the end of the
compensable period, obviating the necessity for de-
layed appeal.  So far as this opinion is concerned, we
address ourselves to the issue of whether the appeal
board abused its discretion in granting delayed ap-
peal.  Based upon the facts alleged in the petition,
it is our opinion that the board did not abuse its
discretion, in view of prior holdings of this Court.
In the case of *Zielke* v. *A. J. Marshall Company,*
306 Mich 474, this Court held that a defendant-em-
ployer was entitled to delayed appeal upon the claim
that because of "an error in dictation" appeal was
not filed within the normal 10-day period allotted by
statute.  The opinion in the *Zielke Case* is quoted, in
part, herewith (pp 477, 478) :

"Lumbermen's Mutual ascribed the reason for
failure to file its claim for review within the 10 days
to 'an error in dictation.'  Considerable latitude is
given the department in determining the sufficiency
of a reason for not promptly filing claim for review.
We do not believe that there was such an abuse of
discretion by the department in granting the order
extending the time so that we should set it aside.
The compensation act should be liberally construed."

As appears in the petition for delayed appeal, in
this case the essential cause for delay was a desirable
waiting upon relevant decisions of this Court which
had been submitted, but not decided.  Obviously, the
reason for delay in this case is far stronger than in
the *Zielke Case.*  We hold, therefore, that the appeal
board did not abuse its discretion.

### 2. *Did plaintiff suffer loss of industrial use of his leg?*

Appellants claim this is a matter of statutory in-
terpretation.  Plaintiff-appellee contends that it is

purely a question of fact, already determined by the appeal board and supported by competent evidence. Principal contention of appellants is that there can be no loss of industrial use of the legs within the meaning of the statute as amended, where there is no direct injury to the legs. PA 1912 (1st Ex Sess), No 10, part 2, § 9 *et seq.*, as amended (CLS 1956, § 412.9 *et seq.* [Stat Ann 1960 Rev § 17.159 *et seq.*]). Section 9, subd (a) of part 2 of the act provides "While the incapacity for work resulting from the injury is total, the employer shall pay", according to schedule, "and in no case shall the period covered by such compensation be greater than 500 weeks from the date of injury, * * * except for permanent and total disability as defined in sections 8a and 10, when the compensation shall be paid for the duration of such permanent and total disability." Section 10 of part 2 of the act provides:

"Total and permanent disability, compensation for which is provided in section 9 hereof, means:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility.

"(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

Under construction normally accorded this act, it would seem that to read into its provisions the restrictive interpretation sought by appellants is to do considerable violence to elemental principles of construing the act. Although appellants' presentation of legislative history is impressive, it is no substitute for the language of the statute itself. Appellants would have us read the act as follows: total and permanent disability occurs when, among other ways, there is a total loss of industrial use of both legs, occasioned by direct injury to both legs. Of course, a reading of subsection (7), quoted above, presents no such restriction. Obviously, we are not referring to amputation or paralysis, both of which are otherwise covered in section 10, as quoted. We construe the statute to mean that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible. Testimony of the treating physician, quoted above, assigned the disability to the presence of a fistula tract, with pain resulting from any pressure being borne by either leg. Therefore, the disability would seem fairly within the scope of the statute.

### 3. Date of loss of industrial use.

Appellants claim that any alleged loss of industrial use occurred before the 1956 amendment to section 10, being subsection (7), already discussed above. Although the original disability occurred in 1949, it is clear from the testimony that permanent and total disability occurred in November, 1957. The date fixed by the appeal board was November 6, 1957. Testimony amply supports this finding. Although disabled originally in 1949, plaintiff had worked in-

termittently, as conditions would permit, from that time up to 1957, when the granuloma developed and additional surgery was necessary. The finding of the appeal board on this point is supported by competent evidence, and, upon the showing herein made, is conclusive. CL 1948, § 413.12 (Stat Ann § 17.186).

Other contentions do not merit discussion. Affirmed. Costs to plaintiff-appellee.

Carr, C. J., and Dethmers, Kelly, and Souris, JJ., concurred with Smith, J.

Black and Kavanagh, JJ., concurred in result.

O'Hara, J., took no part in the decision of this case.