MILLER *v.* SULLIVAN MILK PRODUCTS, INC.

1. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—LOSS OF USE—HANDS AND LEGS.

Permanent and total disability because of the loss of the industrial use of the hands or the legs is not limited to loss because of paralysis or amputation (MCLA § 412.10[b][7]).

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Workmen's Compensation §§ 283, 287.
[2]  58 Am Jur, Workmen's Compensation §§ 198, 209.
[3]  58 Am Jur, Workmen's Compensation § 4.
[4]  58 Am Jur, Workmen's Compensation § 198.
[5]  58 Am Jur, Workmen's Compensation § 198.
    What amounts to total incapacity within workmen's compensation acts. 98 ALR 729.
[6]  58 Am Jur, Workmen's Compensation §§ 284, 287.

2. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—
   LOSS OF USE—LEGS.
   > Permanent and total loss of the industrial use of the legs is not
   > limited to direct injury but includes indirect injury (MCLA
   > § 412.10[b][7]).

3. WORKMEN'S COMPENSATION—CONSTRUCTION OF STATUTE.
   > In construing the Workmen's Compensation Act, the court must
   > be guided by the elemental principle that workmen's compensa-
   > tion legislation rests upon the conception that the injured
   > workman is entitled to compensation for any injury sustained
   > in the service of an industry to whose operations he contributes
   > his work and that the legislation is based on status, not
   > implied contract (MCLA § 411 *et seq.*).

4. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—
   LOSS OF USE—LEGS.
   > The loss of the industrial use of one leg may cause the loss of
   > the industrial use of the other leg, although that leg is
   > physically sound because of the peculiar relationship and inter-
   > dependency of the legs (MCLA § 412.10[b][7]).

5. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—
   LOSS OF USE—LEGS.
   > A claimant is entitled to compensation for permanent and total
   > disability of both legs because of loss of industrial use where
   > the right leg, although not anatomically damaged nor, of it-
   > self, productive of pain, is so affected by the physically
   > damaged and useless left leg that claimant can walk for only
   > short distances, cannot arise from a supine position, cannot
   > squat, cannot kneel, cannot climb a ladder, cannot descend
   > stairs in a normal manner, cannot stand in one position for
   > more than five minutes, and cannot sit for more than thirty
   > minutes (MCLA § 412.10[b][7]).

6. WORKMEN'S COMPENSATION—PERMANENT AND TOTAL DISABILITY—
   LOSS OF USE—LEGS—CONSTRUCTION OF STATUTES.
   > Loss of the industrial use of the legs should be read in the
   > Workmen's Compensation Act to speak in economic, not
   > anatomical, terms (MCLA § 412.10[b][7]).

Appeal from Workmen's Compensation Appeal
Board. Submitted Division 3 June 3, 1970, at Grand
Rapids. (Docket No. 7,619.) Decided August 25,

1970.   Leave to appeal granted November 24, 1970.
384 Mich 783.

Claim by Max Miller against Sullivan Milk Products, Inc., Consolidated Underwriters, and the Second Injury Fund for workmen's compensation. Claim denied by the Workmen's Compensation Appeal Board. Claimant appeals by leave granted. Reversed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard,* Assistant Attorney General, for defendant Second Injury Fund.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for defendants Sullivan Milk Products, Inc., and Consolidated Underwriters.

Before: T. M. BURNS, P. J., and FITZGERALD and BYRNS,* JJ.

BYRNS, J.   This is an appeal from a decision of the Workmen's Compensation Appeal Board which, by a single, brief opinion, affirmed a decision of a hearing referee denying the appellant (hereinafter referred to as the plaintiff) further compensation. The plaintiff asserts that he is entitled to further compensation from his employer, the insurance carrier, and the Second Injury Fund, contending that he is permanently and totally disabled within the meaning of the Workmen's Compensation Act because he

---

* Circuit judge, sitting on the Court of Appeals by assignment.

has lost the industrial use of both legs.   MCLA
§ 412.10(b)(7) (Stat Ann § 17.160[b][7]**).

Plaintiff's claim of total disability results from a
severe fracture of his left ankle which occurred
February 24, 1958, when he slipped on ice while
working for his employer, Sullivan Milk Products.
Plaintiff had been employed with Sullivan Milk
Products for ten years as a milk driver and delivery
man requiring considerable physical activity.

The injury to the ankle was quite serious.   The
plaintiff underwent seven or eight operations in an
effort to repair the damage and was totally disabled
for several months immediately following the acci-
dent.   He then performed intermittent tasks for his
employer until September, 1962.   He has performed
very little work since that date.

Plaintiff received compensation for 500 weeks fol-
lowing his injury until September 25, 1967, and at
the end of this period applied for additional pay-
ments from the defendants alleging that, as a result
of the injury to his ankle, he was totally and perma-
nently disabled in that he had lost the industrial use
of both legs.   The referee denied his claim and the
appeal board affirmed.

It is undisputed that the plaintiff has lost the in-
dustrial use of his left leg.   It is also undisputed
that there is no physical injury to the right leg, al-
though since it is used to protect the left leg, it
weakens and tires more than it did before the acci-
dent.   At the hearing, evidence revealed that the
plaintiff, who has no clerical education or training,
can walk for only 15 or 20 minutes or about half a
mile in distance if the ground is even and smooth.
He can only stand in one place for five minutes and

---

** Superseded by MCLA 1970 Cum Supp § 418.361 (Stat Ann 1970
Cum Supp § 17.237[361]).

then has to elevate the left leg for about 15 or 20 minutes to alleviate the plain. He is never free of pain in the left leg. He can maintain a seated position for about 30 minutes before he must, again, elevate the left leg. Plaintiff cannot squat, arise from a supine position, kneel, climb a ladder, or descend stairs in a normal manner. Plaintiff is unable to drive a standard-shift automobile, although he is able to drive a vehicle with an automatic transmission. His left ankle swells each day to an inch or an inch and one-half above its normal size. It is never pain-free.

At the conclusion of the hearing, the referee ruled:

"Plaintiff's application for total and permanent disability should be and hereby is denied. Plaintiff has a severe injury to the left ankle resulting in industrial loss of use of the left leg. Plaintiff has industrial capacity of all other limbs but is prevented from exercising said capacity by reason of the left leg injury. Plaintiff does not meet the statutory definition of total and permanent disability."

On appeal, the appeal board found:

" * * * as a result of this injury said left leg is industrially useless."

"Plaintiff has incurred no injury to his right leg and the proofs show that if his left leg was normal, plaintiff would in no way be disabled."

*"Plaintiff may be totally disabled,* but his loss of industrial use is completely confined to one leg, not both, and thus plaintiff has failed to come within the definition of prerequisite to qualify for additional benefits provided by law." (Emphasis added.)

In his appeal the plaintiff relies heavily upon the decision of the Supreme Court in *Paulson* v. *Muskegon Heights Title Company* (1963), 371 Mich 312, to support his position. The plaintiff asserts that

because the injury to his left leg has disabled him in the industrial use of the right leg, he must necessarily come within the terms of the act in providing for the loss of the industrial use of both legs. [§ 10 (b)(7).]

The defendants, on the other hand, counter with the argument that because the plaintiff suffers absolutely no physical injury to the right leg, he does not come within the terms of the act. The defendants rely primarily upon the decision of the Supreme Court in *Hutsko* v. *Chrysler Corp.* (1968), 381 Mich 99, and argue that *Paulson, supra,* requires some physical effect (severe pain) in the otherwise normal leg in order to qualify for industrial loss.

Section 10(b) of Part II of the Workmen's Compensation Act provides:

"(b) Total and permanent disability, compensation for which is provided in section 9 means:

(1) Total and permanent loss of sight of both eyes.

(2) Loss of both legs or both feet at or above the ankle.

(3) Loss of both arms or both hands at or above the wrist.

(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

(5) Permanent and complete paralysis of both legs or both arms or 1 leg and 1 arm.

(6) Incurable insanity or imbecility.

(7) Permanent and total loss of the industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purposes of this subsection (7) such permanency to be determined not less than 30 days before the expiration of 500 weeks from the date of injury."

It is quite clear from a reading of subsection (7) of section (10)(b) of the statute that said subsection

was intended to encompass those losses other than by amputation or paralysis for those losses are specifically provided for in the preceding subsections of 10(b) and in section 10(a). It is also clear that it does not limit itself to direct injury to the legs. *Paulson* v. *Muskegon Heights Tile Co., supra*, p 319. The legislature in § 10 (b) (7) appears to be covering the practical realities of industrial life when it added the section in 1956.

In *Paulson* the plaintiff suffered a tear in the urinary tract which caused constant drainage from the bladder through the sinus tract in the plaintiff's lower abdomen. As a result of the injury the plaintiff experienced severe pain when he brought any pressure to bear on his legs. The legs, however, were normal in every respect. The Court, in ruling that the plaintiff had lost the industrial use of his legs within the meaning of the statute, construed the statute to mean,

" * * * that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible."

While this construction of the statute was peculiarly related to the facts of the *Paulson* case itself, it does provide a valuable insight to a proper decision in the instant case.

Like *Paulson,* the plaintiff here suffers from an admitted left leg-connected disabling pain which is so severe as to make the use of the plaintiff's legs in industry practically impossible. He can walk only for short distances (half a mile on level ground); he cannot stand in one position for more than five minutes; he cannot sit for more than 30

minutes; he cannot arise from a supine position, as from a bathtub; he cannot squat, kneel, climb a ladder, or descend stairs in a normal manner. He is never pain-free in the left leg.

While both of the plaintiff's legs in *Paulson* were affected by the pain, only the left leg of the plaintiff here is so affected. The referee and the appeal board found in the instant case that the plaintiff may be totally disabled in the use of his legs due to the left leg-relating pain and the physical limitations of that leg. However, they interpreted § 10(b)(7) narrowly and restrictively to require that there be some injury or pain in the right leg before it could qualify under that section. This decision, rather than being a factual finding, was a legal interpretation by them of *Paulson*. We do not so interpret *Paulson* as it applies § 10(b)(7) to the facts in this case.

In *Paulson,* as do the defendants here, the defendants urged that there can be no loss of industrial use of the legs within the terms of the statute as amended where there is no direct injury to the legs and both legs are anatomically normal and healthy. In replying to this argument the Supreme Court stated:

"Under construction normally accorded this act, it would seem that to read into its provisions the restrictive interpretation sought by the appellants is to do considerable violence to elemental principles of construing the act." p 319.

Similarly, the construction sought by the defendants here would also do considerable violence to the basic spirit and elemental principles of the Workmen's Compensation Act.

"Workmen's compensation legislation rests upon the idea of status, not upon the idea of implied con-

tract; that is upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of wages and the other for the sake of profits." *Cudahy Packing Company of Nebraska* v. *Parramore* (1923), 263 US 418, 423 (44 S Ct 153, 154, 68 L Ed 366, 369).

The defendants' narrow construction seizes upon the word "both" in § 10 of the act. This word, they assert, is intended to mean what it says. The plaintiff may be totally disabled, but because he has failed to injure "both" the right leg and the left leg on his route to becoming totally disabled, he is not entitled to total and permanent compensation.

In support of their narrow construction they rely upon *Hutsko* v. *Chrysler Corp.* (1968), 381 Mich 99, where the Supreme Court, in construing the specific loss provisions of the statute, stated:

"In order to qualify for the specific loss payment where there has not been actual physical loss of the member as by amputation, there must be that total incapacitating loss of use which renders the organ or member industrially useless for any type of work, skilled or unskilled. To hold otherwise we think would be a logical contradiction." p 102.

In *Hutsko,* however, the facts and the issue were much different than those facing this Court. The plaintiff there had lost the industrial use of his hand for the purposes of his particular skill, but retained a measure of general unskilled use thereof. The issue to be resolved was not whether the plaintiff had lost the industrial use of his hand but whether the plaintiff had lost the use of his hand within the meaning of the specific loss schedule of the act merely because he could no longer engage in his particular skill.

Here it is not disputed that the plaintiff has lost the industrial use of his left leg for the purposes of any skill. The issue is whether the effects of such loss on the uninjured leg, recognizing the essential inter-relationship of one leg to another, is sufficient to render both legs totally, permanently and industrially lost.

From the peculiar nature of a leg, its loss has a much more disastrous effect upon the loser than loss of any other one of two related organs of the body including the eyes, ears, and hands. Especially is this so where, as here, the loss is of such a nature as will not allow a replacement of the limb which, because of its inflexibility, and painful and damaged state, renders the other leg, certainly for employment, useless. The effect of the admittedly permanently disabled left leg is such as to cause the industrial loss of the right leg.

Of what value is an anatomically good leg if its function and use is so limited by its twin limb as to destroy its industrial usefulness? We cannot read *Paulson* to mean only that unless the plaintiff can state that he has pain in the right leg, even though its industrial use is gone, he is not to have the benefits provided for total loss of industrial use of both legs. Here, while the right leg is normal, the useless left leg is such a burden that both are of little use and no use industrially.

An individual's legs are directly dependent upon each other for use and manipulation in climbing, coordinating, balancing, walking, standing, weight bearing, kneeling, squatting, and even sitting. Clearly under these circumstances, where because of the injury to one leg the other is rendered industrially useless, the individual has lost the industrial use of both legs within the terms of the statute [§ 10(b)(7)], which we read to speak in economic

and not anatomical terms, as do the preceding subsections of § 10.

Defendants' arguments that our finding in favor of the plaintiff will in effect open the floodgates to claims for injuries to the voice or other parts of the body in the name of the industrial loss of use of both legs to qualify for total and permanent compensation defy logic. In this case there is a clear and natural relationship between the left leg and the right leg which does not exist between other parts of the body. Certainly it cannot be said that the physically sound right leg is industrially useful since it does not exist for industrial purposes, if for any purposes, independent and unrelated to the other, admittedly useless, left leg.

Therefore, we reverse the decision of the appeal board, which affirmed the decision of the referee, denying the plaintiff's petition for extra payments.

Because we decide the plaintiff's claim on the merits, it is unnecessary for us to discuss the question he raises with respect to the constitutionality of a denial of his claim.

Reversed, with no costs, an issue of statutory construction being involved.

All concurred.