BURKE v ONTONAGON COUNTY ROAD COMMISSION

1. WORKMEN'S COMPENSATION—LOSS OF INDUSTRIAL USE—EMPLOY-
   MENT-RELATED INJURY.

   Under a section of the Workmen's Compensation Act, loss of
   industrial use of limbs must result from an employment-related
   injury (MCLA 418.361[2] [g]).

2. WORKMEN'S COMPENSATION—LOSS OF USE OF LEGS—LOSS OF INDUS-
   TRIAL USE—EMPLOYMENT-RELATED INJURY.

   Appeal from Court of Appeals, Division 2, Dan-
hof, P. J., and Quinn and McGregor, JJ., denying
application for leave to appeal from an order of
the Workmen's Compensation Appeal Board. Sub-
mitted January 9, 1974. (No. 10 January Term
1974, Docket No. 54,641.) Decided February 14,
1974.

Claim by Emil E. Burke against Ontonagon
County Road Commission, Michigan State Acci-
dent Fund and the Second Injury Fund for work-
men's compensation for permanent and total loss
of industrial use of both legs. Linda Burke substi-
tuted as party plaintiff upon the death of Emil E.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Workmen's Compensation §§ 282, 283, 287, 288.

Burke. Award denied. Court of Appeals denied plaintiff's application for leave to appeal. Plaintiff appeals. Reversed and remanded to the Workmen's Compensation Appeal Board for further proceedings.

*Wisti & Jaaskelainen,* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.* (by *James A. Sullivan),* for defendant Ontonagon County Road Commission and Michigan State Accident Fund.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *David J. Watts* and *A. C. Stoddard,* Assistants Attorney General, for Second Injury Fund.

WILLIAMS, J. In this case it is not disputed that the claimant (plaintiff's decedent) injured one leg in an employment-related accident. Subsequent movement had debilitating consequences for his other leg, because his injured leg had to be favored. The claimant was unable to return to work. The Workmen's Compensation Appeal Board, in determining whether the employment-related injury caused "permanent and total loss of industrial use of both legs" under § (b)(7) of the Workmen's Compensation Act[1] used the following hypothetical test:

"[A]ssuming plaintiff's left leg was not disabled [it actually was], would the right leg be industrially useless?"

We disapprove of this test, and set out the

[1] MCLA 412.10; MSA 17.160, presently MCLA 418.361 (2)(g); MSA 17.237 (361)(2)(g).

proper test, which views the claimant "as a whole man", later in this opinion.

# I. FACTS

The claimant, while working for defendant Road Commission, slipped and fell into a hole, injuring his left knee. The next day he returned to work lifting 100 lb. bags. However, the third day he had to go to the hospital for treatment of his swollen leg. He again returned to work loading 100 lb. sacks on the sixth day after the accident. Thereafter, however, he was never again able to work. He underwent surgery, was treated frequently by his family physician for calluses, had injections in both knees for pain, and took pain pills daily for a number of years. A few years after the injury, he was unable to walk without experiencing pain, and without the aid of crutches. Because the injury to his left leg caused faulty weightbearing, his right leg went, in claimant's words, "on the bum."

After exhausting 500 weeks with specific compensation, claimant sought benefits for "permanent and total loss of industrial use of both legs." His family physician and treating orthopedic specialist both testified claimant had no industrial capacity in either leg. Defendant's orthopedic surgeon, however, testified equivocally. When asked "considering his right leg alone" whether Burke was industrially disabled, he responded: "Burke has some abnormality or disability in his right leg, but this, in my opinion, would not disable him for ordinary labor". But he admitted that, viewing him "as a whole man" Burke was not able to work.

The referee denied additional compensation. The perturbed Appeal Board said:

"The poignant question is, is the right leg, in and of itself industrially useless, or assuming plaintiff's left leg was not disabled, would the right leg be industrially useless?"

Then the Appeal Board, relying on the answer to the "considering his right leg alone" question posed by defendant's expert, held that the claimant had not sustained the burden of proving industrial loss of use of both legs. The Court of Appeals denied leave to appeal.

## II. PERTINENT PRECEDENT

The leading case in this area is *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963). The claimant in that case suffered a punctured bladder and a fractured pelvis in an automobile accident in the course of his employment. The consequence of the accident was that the claimant suffered constant urine drainage from the bladder through sinus tracts in this area of his body. There was no injury to the legs whatsoever. In *Paulson,* the treating physician testified as follows:

"*A.* His disability results from the presence of the fistulous tract, the fistulous sinus, with pain resulting from any pressure *being borne by either leg, especially his right leg,* so that even walking after a period of time or for short distances of a half a block will prevent him or cause him to stop and rest, shifting his weight primarily to the left side, to the left leg." (Emphasis in *Paulson* —371 Mich 312, 314).

This Court disposed of *Paulson* as follows:

"Appellants would have us read the act as follows: total and permanent disability occurs when, among other ways, there is a total loss of industrial use of both

legs, occasioned by direct injury to both legs. Of course, a reading of subsection (7) [MCLA 412.10; MSA 17.160] *. * * presents no such restriction * * * We construe the statute to mean that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible. Testimony of the treating physician, quoted above, assigned the disability to the presence of a fistula tract, with pain resulting from any pressure being borne by either leg. Therefore, the disability would seem fairly within the scope of the statute." (371 Mich 312, 319.)

This last quotation makes two things clear. First, there may be a total industrial loss of use of both legs without direct injury to both legs or, in fact, without direct injury to either leg. Second, *Paulson* establishes the following test for permanent and total loss of industrial use of both legs:

"[I]s that leg-connected disabling pain * * * so severe as to make use of the legs in industry practically impossible"? (371 Mich 312, 319).

*Paulson* was followed in *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970). There, the claimant suffered serious impairment of hearing due to factory noise and acquired vertigo "which is precipitated when he uses his legs". (27 Mich App 597, 599.) The Court of Appeals found that he had sustained "permanent and total loss of industrial use of both legs" and was entitled to compensation for permanent and total disability, although claimant's "legs themselves were not injured or affected." (27 Mich App 597, 601.)

The opposition to finding loss of industrial use in *Lockwood* was based, as in *Paulson,* on the fact

that the legs themselves were not impaired. Writing for the Court of Appeals, Judge, now Justice LEVIN, however, observed as follows:

"But the appeal board ruled that Lockwood's case was different than Paulson's because Lockwood's 'disabling symptoms are not traceable to the use of the lower limbs *per se* but are due to an impairment of the balance mechanism in his inner ear which is aggravated by any movement and/or noise'.

"We think that the appeal board misreads *Paulson;* a teaching of *Paulson* is that disabling symptoms are traceable to the use of the lower limbs when they are due to an impairment of another bodily mechanism which is aggravated by leg movement, that compensation for total and permanent disability is payable when a non-leg malady is triggered by the use of the legs and it is that condition which prevents use of the legs in industry." (27 Mich App 597, 603.)

*Lockwood* reemphasizes that there may be total industrial loss of use of both legs without direct injury to both legs or to either leg. *Lockwood* rephrases the "leg-connected disabling pain" rule as follows:

"[W]hen a non-leg malady is triggered by the use of the legs and it is that condition which prevents use of the legs in industry."

*Paulson* and *Lockwood* examine whether loss of industrial use of both legs can have its source in physical injuries which are not leg-related. A third case in this area, *Miller v Sullivan Milk Products Inc,* 385 Mich 659; 189 NW2d 304 (1971), explores loss of industrial use from a significantly different, though seemingly analogous, angle. It analyzes primarily whether the loss of industrial use of both legs arises from an employment-related or non-employment-related cause.

The claimant in *Miller* suffered permanent injury to his left leg when he slipped on ice while delivering milk. It was undisputed that there was no impairment or injury of the right leg. While claimant's movements were reduced, he did work intermittently after the injury. The referee and Appeal Board found loss of industrial use confined to the left leg alone. While the Court of Appeals in effect found industrial loss of use of both legs, this Court affirmed the Appeal Board.

This Court made two observations pertinent to our analysis.

"The basic issue in connection with claims of total and permanent disability is one of fact. Each claim must be weighed carefully. Some claims will fail and some will prevail, depending upon the quality of the proofs presented at the hearing. When the limb cannot be used industrially simply because of other disabling infirmities, it would do violence to the statutory intent to hold that the industrial loss of use of such limb has occurred." (385 Mich 659, 667.)

"Based upon the testimony in this case, the Court of Appeals might also have found that plaintiff weighed 300 pounds at the time of the hearing and during the last ten years has weighed as much as 377 pounds; that his doctor told him he should lose weight; that for two years he worked at a friend's garage where he answered the phone and kept track of car parts." (385 Mich 659, 668.)

*Miller* does not change the rule in *Paulson* which it recognized. (385 Mich 659, 666.) Nor does it change the rule in *Lockwood.*

As the two above quotations from *Miller* indicate, the claimant in *Miller* failed to prove that such loss of industrial use as he suffered was due to his employment-related injury. Note that the first quotation specifies:

"When the limb cannot be used industrially simply because of *other* disabling infirmities, it would do violence to the statutory intent to hold that the industrial loss of use of such limb has occurred." (Emphasis supplied.)

The second quotation then refers to the claimant's heavy weight despite his doctor's order to reduce.

The teaching of *Miller* is that loss of industrial use must result from an employment-related injury. In other words, claimant *Miller* did not prove that his loss of industrial use to both legs resulted from the employment-related injury to his left leg.

In *Paulson* and *Lockwood* there was ample showing that the loss of industrial use was caused by an employment-related injury. In *Paulson* the employment-related injury was the bladder, punctured in an employment-related accident. It was the pain from this bladder when Paulson used his legs that was "so severe as to make the use of the legs in industry practically impossible." In *Lockwood* the employment-related vertigo "triggered by the use of the legs" created a "condition which prevents use of the legs in industry."

In summary, *Paulson* and *Lockwood* lay down two tests for determining whether an employment-related injury statutorily causes the "permanent and total loss of industrial use of both legs":

1. It is not necessary that both legs or either leg be injured at all.

2. The industrial loss of use of both legs may result from "leg-connected disabling pain * * * so severe as to make use of the legs in industry practically impossible" even though that pain is generated from an injury elsewhere in the body *(Paulson)* or it may result "when a non-leg malady is triggered by use of the legs and it is that

condition which prevents use of the legs in indus-
try" *(Lockwood).*

*Miller* rules, while *Paulson* and *Lockwood* take
for granted that:

The "leg-connected disabling pain" or the "non-
leg malady" must be the consequence of an em-
ployment-related injury.


### III. *PAULSON-LOCKWOOD* AND *MILLER*
TESTS v THE APPEAL BOARD'S *BURKE* TEST

Before weighing the validity of the Appeal
Board's *Burke* test "assuming plaintiff's left leg
was not disabled [it actually was], would the right
leg be industrially useless?", in the light of *Paul-
son, Lockwood* and *Miller,* let us examine the
context in which this test is presented. The perti-
nent part of the Appeal Board's opinion follows:

"Plaintiff's decedent did suffer an extension of disabil-
ity because his industrially useless left leg caused extra
strain over the years on his right knee, but *it must be
determined that this extension of disability amounted
to the industrial loss of use of the right knee as a
separate member.* The right knee in conjunction with
the left leg was continuing the progression of injury
and disability until plaintiff's decedent's death.

"The poignant question is, is the right leg, in and of
itself industrially useless, or *assuming plaintiff's left leg
was not disabled, would the right leg be industrially
useless?*

"Applying the medical testimony to the questions, it
is clear that the answers are 'No.' The plaintiff has
failed to meet the burden of proof to show plaintiff's
decedent had lost the industrial use of both legs."
(Emphasis added.)

It is quite clear that the real issue in *Burke* is
whether there actually was an industrial loss of
use of both legs caused by the injury he suffered

*(Paulson* issue) rather than whether the industrial loss suffered arose out of an employment-related or non-employment-related injury *(Miller* issue). It is evident from the dispositive portion of the Appeal Board opinion, quoted above, that the issue it was dealing with was not whether Burke's injury was employment-related but whether his injury caused the industrial loss of use of both legs. It demonstrates this because it recognizes that the left leg was industrially useless and asks "assuming plaintiff's left leg was not disabled, would the right leg be industrially useless?"

In other words, the *Burke* issue is not a *Miller* issue—"was the cause of the industrial loss an employment-related injury?" Likewise, the Appeal Board's test in *Burke* which goes to the connection between the injury suffered and the industrial loss, is not related to *Miller* nor *Miller* to it. So nothing further need be said about *Miller's* connection with this case beyond saying that it may be inferred that the Appeal Board opinion does not dispute that if there was an industrial loss of use of both legs it arose from an employment-related injury, as *Miller* prescribes.

We come, then, to considering the Appeal Board's test in *Burke* in light of *Paulson* and *Lockwood.* It is clear from the excerpt from the Appeal Board opinion quoted above that the Board's test requires both injury and industrial loss in each leg, hypothetically separated from every other member of the body. This requirement is specified in three places in the above quotation.

1. " * * * it must be determined that this extension of disability amounted to the industrial loss of use of the right knee as a separate member"

2. " * * * is the right leg, in and of itself industrially useless * * * "

3. " * * * assuming plaintiff's left leg was not disabled, would the right leg be industrially useless * * * "

From this it is clear that the Appeal Board's test is out of tune with the *Paulson* and *Lockwood* tests.

It is out of tune with the first test—"[i]t is not necessary that both legs or either leg be injured at all"—because it requires each leg be considered in hypothetical isolation from the other members of the body and to have its own injury. In both *Paulson* and *Lockwood* neither leg was industrially injured. Under the test applied in *Burke* there could not have been recovery in either case.

It is out of tune with the second test—"[t]he industrial loss of use of both legs" may result from "leg-connected disabling pain * * * so severe as to make use of the legs in industry practically impossible" even though that pain is generated from an injury elsewhere in the body *(Paulson)* or it may result "when a non-leg malady is triggered by use of the legs and it is that condition which prevents use of legs in industry" *(Lockwood).* It is out of tune with the second test because it requires each member of the body to be found industrially useless from an injury in that very member in hypothetical separation from the other members of the body. In *Paulson* and *Lockwood* the leg-connected pain was generated from the interplay of use of the legs and an injury in another part of the body.

We find nothing in the reasoning of the Appeal Board to cause us to overrule *Paulson* or *Lockwood.* We are satisfied that these cases correctly interpret the Workmen's Compensation Act and provide a reasonable and logical policy. We reaffirm *Paulson* and approve *Lockwood.*

As for the application of *Paulson* and *Lockwood*

to the facts in *Burke,* it makes little sense to hold that there is permanent and total loss of industrial use of both legs where a malady in the head or in the area of the groin may interact with movement of the legs to cause a condition in the legs that makes their use in industry practically impossible and yet turn around and say that just because the malady is in one leg, rather than in the head or groin there is no industrial loss of use of both legs, although physically there is such loss. We reject such a rule as wholly unnatural, unreasonable and illogical. We therefore amplify and consolidate the tests in *Paulson* and *Lockwood,* as follows:

There is permanent and total loss of industrial use of both legs where, *inter alia,*

1. An employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry.

2. The use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry.

In conclusion, as we consider the hypothetical test the Appeal Board applied in *Burke* contrary to the approved tests of *Paulson* and *Lockwood,* we reverse and remand this case to the Appeal Board for further proceedings not inconsistent with this opinion. Costs to plaintiff-appellant.

T. M. Kavanagh, C. J., and T. G. Kavanagh, Swainson, Levin, M. S. Coleman, and J. W. Fitzgerald, JJ., concurred with Williams, J.