## O'CONNOR v BINNEY AUTO PARTS

Docket No. 135042. Submitted February 9, 1993, at Lansing. Decided February 8, 1994, at 9:10 A.M.

Harold O'Connor, an amputee with a prosthesis below the left knee, sought workers' compensation benefits following injury to the right knee allegedly sustained in the course of employment first by Binney Auto Parts and then by Joynt Auto Parts. A magistrate in the Bureau of Workers' Disability Compensation found O'Connor totally disabled by an injury sustained while employed at Binney and ordered Binney and its insurer, Sentry Insurance Company, to pay for an operation to replace O'Connor's right knee. The magistrate declined to find O'Connor permanently disabled, stating that the extent of disability following a knee operation could not be determined at the time of the hearing in view of a prognosis of ninety-five percent recovery following the operation. The Workers' Compensation Appellate Commission affirmed the magistrate's findings of O'Connor's work-related injury and Binney and Sentry's liability, but overruled the magistrate's decision regarding the permanency of O'Connor's disability, determining that O'Connor had established permanent disability with proof at the hearing before the magistrate that he had lost the industrial use of his legs. The Second Injury Fund, which is liable for benefits in cases of total and permanent disability, appealed by leave granted, challenging the determination by the appellate commission that O'Connor had sustained a permanent disability. Binney and Sentry cross appealed, claiming that O'Connor's employment at Joynt had aggravated the condition of his right knee, thus requiring that Joynt be held liable for first-level benefits.

The Court of Appeals held:

1. The Workers' Compensation Appellate Commission erred in insisting that on the date of the hearing before the magis-

REFERENCES

Am Jur 2d, Workers' Compensation § 404.

Sufficiency of evidence in personal injury action, to prove permanence of injuries and to warrant instructions to jury theron. 18 ALR3d 170.

trate, O'Connor's condition required a determination of permanent disability, notwithstanding competent, material, and substantial evidence on the whole record that O'Connor desired to have surgery to replace the right knee and that his condition could be greatly improved with such surgery. A workers' compensation award is an adjudication of the claimant's condition at the time it is entered and does not preclude subsequent awards or modifications of the original award on a showing that the claimant's physical condition has changed. In this case, the hearing officer was justified in concluding that a determination of permanency would be premature.

2. Competent, material, and substantial evidence on the whole record supported the magistrate's findings that O'Connor's disability arose from an injury sustained during employment by Binney and that Binney and its insurer are exclusively liable for O'Connor's first-level benefits.

Affirmed in part, reversed in part, and remanded to the appellate commission.

WORKERS' COMPENSATION — TOTAL AND PERMANENT DISABILITY — INDUSTRIAL USE OF BOTH LEGS.

The permanence of the loss of the industrial use of both legs of an amputee who has a prosthesis below one knee and who is willing to undergo a medically prescribed operation to replace the other knee following a work-related injury to that knee need not be determined until after the operation, but must be determined no later than thirty days before five hundred weeks shall have elapsed after the injury (MCL 418.361[3], 418.521[1]; MSA 17.237[361][3], 17.237[521][1]).

*Eric D. Williams,* for Harold O'Connor.

*Kluczynsky, Girtz & Vogelzang* (by *Duncan A. McMillan*), for Binney Auto Parts and Sentry Insurance Company.

*Bremer, Wade, Nelson, Mabbitt & Lohr* (by *Diane E. Goller*), for Joynt Auto Parts and Meridian Insurance Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Caleb B. Martin, Jr.,* Assistant Attorney General, for Second Injury Fund.

Before: MacKENZIE, P.J., and HOOD and WHITE, JJ.

PER CURIAM. The Second Injury Fund (SIF) appeals by leave granted an October 18, 1990, opinion and order of the Workers' Compensation Appellate Commission (WCAC) granting plaintiff benefits for total and permanent disability based on the loss of the industrial use of both legs after injury to his right knee while employed by Binney Auto Parts. Binney and its insurer, Sentry Insurance Company, cross appeal, claiming that plaintiff's subsequent employment at Joynt Auto Parts aggravated the condition of plaintiff's right knee, requiring that Joynt pay plaintiff's first-level benefits rather than Binney. We affirm the WCAC's decision with regard to liability for benefits, but reverse its determination of total and permanent disability.

In 1967, plaintiff was injured in a nonwork-related accident, resulting in the amputation of his left leg six inches below the knee. Thereafter, he wore a prosthesis on his left leg. On December 7, 1982, while employed by Binney as a machinist, plaintiff injured the cartilage in his right knee, requiring arthroscopic surgery. At that time, plaintiff's orthopedic surgeon, Dr. Darrell J. Potter, also noted mild-to-moderate degenerative arthritis in the knee joint. Plaintiff returned to work at Binney, where he used a crutch and modified his work habits, obtaining assistance from another employee in lifting parts. Periodically, plaintiff experienced pain, quivering, and shaking in his right leg. Dr. Potter testified that he believed the surgery had been successful and that the pain was attributable to degenerative changes.

Plaintiff left Binney's employ for Joynt in 1984. At Joynt, he performed the same type of work as

at Binney, except that lifting was done entirely by hoist. He continued to experience pain, quivering, and shaking in his right leg, which grew worse over time. However, he did not consult a doctor or miss work because of right knee problems during that time. In October 1985, plaintiff was laid off from Joynt.

Plaintiff then did seasonal work for Gummer Peat, making Christmas ropes during the months of October and November in 1985 through 1987. During that time, he experienced increasing debility in his knee. In June 1986, plaintiff again consulted Dr. Potter, complaining of right knee pain. Plaintiff denied any further injury after the injury that occurred in 1982. Potter diagnosed traumatic arthritis arising from the 1982 injury.

In February 1987, plaintiff consulted a second orthopedic surgeon, Dr. Walter M. Braunohler, who recommended knee replacement surgery. Braunohler predicted a ninety-five percent chance of success, producing a pain-free, mobile knee, though plaintiff would still be restricted from running, jumping, climbing, repetitive heavy lifting, and repetitive squatting. Braunohler suggested that plaintiff would be capable of clerical work after surgery. Orthopedic surgeons who examined plaintiff at defendants' request generally agreed that plaintiff should have knee replacement surgery, but even then some restrictions would obtain, preventing plaintiff from doing the kind of work he did at Binney and Joynt, and limiting him to some sort of sedentary work. Plaintiff was eager to have the surgery so that he could return to the job market, but was unable to afford the operation.

In May 1987, plaintiff filed for a hearing. The hearing was held before a magistrate on September 6, 1988. At that time, Gummer Peat and its

insurer were dismissed by stipulation of the parties. The magistrate found that plaintiff's disability arose from the 1982 injury at Binney, and found Binney and Sentry exclusively liable for workers' compensation benefits. The magistrate also found that plaintiff was currently totally disabled and required knee-replacement surgery, and ordered Sentry to pay for the operation. Because plaintiff's degree of postoperative disablement could not be determined on the date of the hearing, the magistrate concluded that he could not find plaintiff to be permanently disabled, as the term "permanent" is used in § 361(3), MCL 418.361(3); MSA 17.237(361)(3), and § 521(1), MCL 418.521(1); MSA 17.237(521)(1), of the Workers' Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

In an October 18, 1990, opinion and order, the WCAC, one commissioner dissenting, affirmed the magistrate's findings of work-related injury and liability, but overruled his decision regarding the permanency of the disability, holding that the question of permanency must be decided on the date of the hearing. It found that plaintiff had established permanent disability by proving that he lost the "primary service" of his leg in industry, with primary service meaning standing and walking. The WCAC apparently also felt that the magistrate's decision, if sustained, would unfairly bifurcate a disability evaluation into an initial determination of liability and a subsequent trial of medical treatment, although a claimant had met the statutory definitions of disability. It regarded as speculative the prediction of ninety-five percent success for the knee replacement operation, and, despite some indication that plaintiff had already

undergone surgery after the magistrate's ruling,[1] added that it could not force a claimant to undergo surgery if the claimant did not wish to do so. It concluded that any postoperative assessment would properly occur at the expiration of the presumptive eight-hundred-week period allowed for total and permanent disability under § 351(1) of the act. MCL 418.351(1); MSA 17.237(351)(1). The SIF appeals the WCAC's reversal of that portion of the magistrate's decision declining to find permanent disability, and Binney appeals the WCAC's affirmance of the decision regarding liability for first-level benefits.

On review by the WCAC, a magistrate's findings of fact are to be regarded as conclusive if supported by "competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3). On review by this Court, findings of fact by the WCAC are conclusive if there is any competent evidence to support them. MCL 418.861a(14); MSA 17.237(861a)(14); *Holden v Ford Motor Co,* 439 Mich 257, 263; 484 NW2d 227 (1992). A decision of the WCAC is subject to reversal if the WCAC operated within the wrong legal framework or its decision was based on erroneous legal reasoning. *Corbett v Montgomery Ward & Co, Inc,* 194 Mich App 624, 631; 487 NW2d 825 (1992).

Sections 521(1) and 361(3) are applicable. Section 521(1) provides:

> If an employee has a permanent disability in the form of a loss of a hand, arm, foot, leg or eye and subsequently has an injury arising out of and in the course of his employment which results in another permanent disability in the form of the

---

[1] The dissenting commissioner noted that plaintiff underwent surgery after the close of proofs.

loss of a hand, arm, foot, leg or eye, at the conclusion of payments made for the second permanent disability he shall be conclusively presumed to be totally and permanently disabled and paid compensation for total and permanent disability after subtracting the number of weeks of compensation received by the employee for both such losses. The payment of compensation under this section shall be made by the second injury fund, and shall begin at the conclusion of the payments for the second permanent disability. [MCL 418.521(1); MSA 17.237(521)(1).]

Section 361(3)(g) defines total and permanent disability to include:

Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury. [MCL 418.361(3)(g); MSA 17.237(361)(3)(g).]

Neither the WCAC nor any of the parties dispute the magistrate's determination that plaintiff was totally disabled at the time of the hearing. The sole dispute is whether his total incapacity must be deemed permanent because, at the time of the hearing, all the evidence indicated that his condition would not improve without knee replacement surgery, despite a ninety-five percent likelihood of improvement if the surgery were undertaken. Plaintiff and Binney contend that the WCAC's contrary conclusion—that on the date of the hearing, plaintiff was permanently disabled within the meaning of the definitional sections—is supported by existing case law, and inquiry after the hearing regarding whether further surgery was successful is precluded. While we agree that the cases cited

provide guidance for determining a permanent loss of use, we conclude that they do not mandate an automatic finding of total and permanent disability in this case.

In *Burke v Ontonagon Rd Comm,* 391 Mich 103; 214 NW2d 797 (1974), the plaintiff suffered a work-related injury to his left knee and, later, as a result of favoring that knee, suffered disability in his right knee. The question was whether the WCAB erred in assessing the total and permanent loss of industrial use of both legs by looking at the capacity of the right knee separate and apart from the injury to the left knee. The Supreme Court stated:

> There is permanent and total loss of industrial use of both legs where, *inter alia,*
> 1. An employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry.
> 2. The use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry. [*Id.* at 114.]

In *DeGeer v DeGeer Farm Equipment Co,* 391 Mich App 96; 214 NW2d 794 (1974), the Supreme Court applied its holding in *Burke* to a claimant who had injured his back, saying that the claimant would be eligible for total and permanent disability benefits if on remand he could show that the use of his legs triggered such disabling back pain that he could no longer use his legs in any reasonable employment.

In *DeMott v Battle Creek Goodwill Industries (Supplemental Opinion),* 54 Mich App 311; 220 NW2d 694 (1974), this Court applied the · *Burke* standard to affirm a WCAB ruling that the claim-

ant, also an amputee suffering a second injury, had lost the industrial use of both legs. In that case, a majority of the board had found that

> [u]nrebutted factual proofs show further that she had been totally disabled as a result of the injury she had received to the lower left extremity from the date of the injury until the proofs were closed at the hearing nearly five years later. *The prognosis of her recovery so that she could again be employed was almost nil.* [54 Mich App 313; emphasis added.]

By contrast, unrebutted testimony in this case offered a prognosis of ninety-five percent recovery after knee replacement surgery.

In *Pipe v Leese Tool & Die Co,* 410 Mich 510; 302 NW2d 526 (1981), the Supreme Court held that the test for loss of industrial use of a body member was whether the claimant had lost the primary service of the member in industry. *Id.* at 527-528. As in *Hutsko v Chrysler Corp,* 381 Mich 99; 158 NW2d 874 (1968), the issue was whether the loss of use of a member needed to be as complete as an amputation. In neither case was there testimony that function of the injured member could be restored.

In *Pleiness v Mueller Brass Co,* 56 Mich App 169; 223 NW2d 634 (1974), this Court held that once the claimant established the loss of industrial use of a second member, he was entitled to receive total and permanent disability benefits and be deemed totally and permanently disabled for eight hundred weeks from the date of injury.[2] *Id.* at 175.

---

[2] The section applicable to that case was MCL 412.8a; MSA 17.158(1), the predecessor of § 521(1), which provides:

> If an employee has at the time of injury permanent disability in the form of the loss of a hand or arm or foot or leg or eye

Both the claimant and his employer had stipulated, however, a hearing referee's decision that the claimant suffered the loss of industrial use of his hand following a work-related injury, constituting a second injury, and the decision was neither contested nor appealed. Later, the claimant sought total and permanent disability benefits from the SIF. The referee found that the SIF was bound by the valid, unappealed order and thus liable for total and permanent second injury benefits, even though, at some unspecified time, the use of claimant's hand had been restored through medical treatment. Reversing the decision of the WCAB, this Court affirmed the decision of the referee, emphasizing that a claimant's loss was to be determined in the initial hearing and any subsequent appeal. Once a loss was determined, and those proceedings concluded, the entitlement to benefits could not be contested until after the eight-hundred-week period. *Id.* at 174. Because the SIF's rights were derivative of the employer's, it was bound by the employer's failure to contest the determination. *Id.* at 171. In this case, by contrast, the original determination is still in issue.

Finally, in *Kidd v General Motors Corp,* 414 Mich 578; 327 NW2d 265 (1982), the Supreme Court similarly explained that where a plaintiff has been determined to be totally and permanently disabled as defined statutorily,[3] rebutting evidence cannot be offered until after the eight-hundred-week presumptive period. *Id.* at 583-584.

and at the time of such injury incurs further permanent disability in the form of the loss of a hand or arm or foot or leg or eye, he shall be deemed to be totally and permanently disabled and shall be paid, from the funds provided in this section, compensation for total and permanent disability after subtracting the amount of compensation received by the employee for both such losses. . . . [56 Mich App 172-173.]

[3] The sections of the act applicable at the time were MCL 412.9(a) and 412.10; MSA 17.159(a) and 17.160.

After addressing the standard of inquiry applicable to the post-eight-hundred-week period, the Court added that

> at the time of injury a claimant's physical condition must *then* appear to be total *and permanent* for him or her to come within the statutory definition. [414 Mich 590; further emphasis added.]

Here, the magistrate concluded that in light of plaintiff's willingness to undergo restorative surgery, and the likelihood of success, plaintiff's condition did not appear to be permanent.

The majority of the WCAC commented, in this case, that magistrates should not speculate concerning the likelihood of postoperative improvement, and additionally cannot compel a claimant to undergo restorative surgery. It was, however, undisputed that plaintiff wanted and planned to have the surgery and that it was likely that the surgery would be successful.

We disagree with the WCAC's insistence that, as a matter of law, the magistrate was obliged to find plaintiff permanently disabled on the date of the hearing. A compensation award is an adjudication of the claimant's condition at the time it is entered. *Hlady v Wolverine Bolt Co,* 393 Mich 368, 376; 224 NW2d 856 (1975). As § 861a(3) provides, an award is to be based on the substantial evidence in the whole record. While an award is not an adjudication of the claimant's future condition, neither does it preclude subsequent awards or modifications of the original award on a showing that the employee's physical condition has changed. *Hlady, supra.* In this case the magistrate was unable to conclude, on the basis of the record, that plaintiff's disability was permanent.

Section 361(3)(g) requires that permanency be

determined no less than thirty days before the expiration of five hundred weeks from the date of injury. Here, during a hearing held approximately three hundred weeks after the injury, the magistrate concluded that an adjudication of permanence would be premature. That conclusion did not bar a subsequent claim for total and permanent disability benefits if plaintiff's condition did not improve as a result of surgery, because his ability to establish the fact of permanence would have changed. The concept of permanence is necessarily one of status, involving an assessment of medical deterioration, stabilization, or improvement, and consideration of medical treatment options. See 1C Larson, *Workmen's Compensation Law,* §§ 57.12(b),(c), pp 10-19 to 10-46. This is not to say that a claimant can never establish permanence at the initial hearing or that a claimant must then rule out all possibility of improvement. In the instant case, however, the evidence presented strongly suggested that plaintiff would undergo surgery that would very likely improve his condition.

Finally, we address the analogy of prostheses raised by plaintiff before the magistrate and again before this Court. Plaintiff asserts that the loss of use of his leg is permanent within the meaning of the statute because his condition will not improve without implant surgery, and in assessing his ability to use the leg we should consider the condition of the leg without the benefit of artificial devices. In *Tew v Hillsdale Tool & Mfg, Co,* 142 Mich App 29; 369 NW2d 254 (1985), this Court considered a claim for specific loss benefits for loss of a foot. The claimant was able to use the foot in industry when encased in a prosthetic boot. This Court held that in judging disability, the use of a prosthetic device was not to be considered. *Id.* at

33. In doing so, the Court relied on a line of "corrected vision" cases, most notably *Hakala v Burroughs Corp (After Remand)*, 417 Mich 359, 364; 338 NW2d 165 (1983), and *Lindsay v Glennie Industries, Inc*, 379 Mich 573; 153 NW2d 642 (1967), which held that a claimant's uncorrected vision should determine an award of specific loss benefits for loss of an eye. The *Tew* Court went to some lengths to emphasize, first, that such a determination applied only to specific loss benefits, and not to total and permanent disability claims. 142 Mich App 34-35. Second, it pointedly distinguished between an external prosthesis and an implant:

> If by some medical procedure an object or device is attached to or implanted in the injured member, it has become part of the body. The issue of industrial loss would then be viewed with respect to what the claimant can do with the member as altered. . . . An arm or leg which contains a surgically inserted pin is, nevertheless, an arm usable in industry without an aid. . . . [A] distinction can and should be made between artificial devices or objects which are made part of the body and external aids which merely enable a person to accomplish what the limb or member cannot do on its own. [*Id.* at 36-37.]

We accept the *Tew* Court's distinctions as useful and valid. The instant case concerns the implant of a device that becomes part of the leg itself. If such a procedure proves to be successful in restoring the use and service of claimant's leg, it is the leg so restored that should be evaluated.

For these reasons, we find the WCAC erred in insisting that on the date of hearing, some two hundred weeks before statutorily necessary, plaintiff's condition required a determination of total and permanent disability, notwithstanding "com-

petent, material, and substantial evidence on the whole record" that plaintiff's condition could be greatly improved with available medical treatment, which would render a finding of permanent disability premature. In so concluding, we repeat that we do not by this decision increase the quantum of evidence necessary to establish permanency or imply that a claimant must establish that there is no possibility of improvement. Rather, we hold that on the record before us, where the claimant expresses a desire for and an intention to undergo specific surgery and where there is medical testimony that the surgery is expected to improve the claimant's condition, the factfinder is justified in concluding that permanency has not been established. If claimant believes that the surgery has not restored the use of his leg, he may petition for benefits, at which time only permanency will be at issue.

Lastly, we affirm the WCAC's holding that Binney was exclusively liable for first-level benefits. As stated above, the WCAC is required to find a magistrate's findings of fact conclusive if supported by "competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3). The magistrate found that plaintiff's condition arose solely from a December 7, 1982, injury while employed at Binney. Despite Binney's argument that Joynt must share liability for benefits because plaintiff's employment at Joynt aggravated his injury, the magistrate's decision was supported by almost unanimous medical testimony diagnosing traumatic arthritis stemming from a specific injury, as well as evidence that, although the work at Joynt was essentially similar to that performed at Binney, the working conditions placed less stress on plaintiff's injured leg, because plaintiff was not required to lift heavy

loads. We conclude that the WCAC's decision to affirm the magistrate's finding was proper under the statute.

Affirmed in part, reversed in part, and remanded to the WCAC for further proceedings consistent with this opinion.