MILLER *v.* SULLIVAN MILK PRODUCTS, INC.

1. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY—
LOSS OF INDUSTRIAL USE—STATUTES—LEGISLATIVE INTENT.

Loss of industrial use of a member of the body, as defined by
prior decisions of the Michigan Supreme Court, was intended
to be restored by the legislature when it added a classification
to the definition of total and permanent disability in the
Workmen's Compensation Act of "Permanent and total loss
of industrial use of both legs or both hands or both arms or
1 leg and 1 arm" (PA 1956, No 195).

2. WORKMEN'S COMPENSATION—LOSS OF INDUSTRIAL USE—SPECIFIC
LOSS—TOTAL AND PERMANENT DISABILITY—QUESTION OF FACT.

Loss of "industrial use" as a specific loss, under the workmen's
compensation provision for total and permanent disability, is
a question of fact and the test of that fact has been to equate
such a loss with the physical or anatomical loss of use of a
member of the body rather than with an economic reality test;
if "loss of use" is established, recovery follows even though
there are no economic consequences from the loss (MCLA
§ 418.361).

3. WORKMEN'S COMPENSATION—TOTAL AND PERMANENT DISABILITY—
QUESTION OF FACT.

The basic issue in connection with claims of total and permanent
disability under the Workmen's Compensation Act is one of
fact (MCLA § 418.361).

4. WORKMEN'S COMPENSATION—INDUSTRIAL LOSS OF USE—STATUTES.

Industrial loss of use of a limb has not occurred when the limb
cannot be used industrially simply because of other disabling
infirmities as this would do violence to the statutory intent of
the Workmen's Compensation Act (MCLA § 418.361).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 58 Am Jur, Workmen's Compensation §§ 283, 287 *et seq.*
[5] 58 Am Jur, Workmen's Compensation § 483.

5. WORKMEN'S COMPENSATION—APPEAL AND ERROR—FINDING OF
FACT.
The Workmen's Compensation Board of Appeals is the final fact
finder in cases before it (MCLA § 418.861).

Appeal from Court of Appeals, Division 3, T. M. Burns, P. J., and Fitzgerald and Byrns, JJ., reversing Workmen's Compensation Appeal Board. Submitted June 23, 1971. (No. 27 June Term 1971, Docket No. 53,028.) Decided August 27, 1971.

26 Mich App 185 reversed.

Claim by Max Miller against Sullivan Milk Products, Inc., Consolidated Underwriters, and Second Injury Fund for workmen's compensation for additional benefits for permanent and total disability due to the loss of industrial use of both legs. Award denied. Plaintiff appealed to the Court of Appeals. Reversed. Defendants appeal. Reversed.

*Marcus, McCroskey, Libner, Reamon & Williams* (by *Edward M. Welch, Jr.*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells*), for defendants Sullivan Milk Products, Inc., and Consolidated Underwriters.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *A. C. Stoddard* and *John J. Long,* Assistant Attorneys General, for defendant Second Injury Fund.

*Amicus Curiae:* Michigan Self-Insurers' Association (by *E. R. Whinham, Jr.*).

ADAMS, J. On February 24, 1958, plaintiff Miller suffered permanent injury to his left leg when he

slipped on some ice while delivering milk. Between 1958 and 1964, he underwent several operations on his left ankle. Miller worked intermittently for defendant from 1958 to 1962.

In November 1967, after the expiration of 500 weeks from the date of injury, Miller filed an application for adjustment of claim with the Bureau of Workmen's Compensation alleging permanent and total loss of industrial use of his legs.

Miller's claim is that he qualifies as totally and permanently disabled under the definition of MCLA § 418.361(2)(g)[1] (Stat Ann 1971 Cum Supp § 17.237 [361][2][g]) of the Workmen's Compensation Act, which reads:

"Total and permanent disability, compensation for which is provided in section 351, means: * * * (g) Permanent and total loss of industrial use of both legs * * * ."

Plaintiff's application for total and permanent disability was denied by the hearing referee who found:

"Plaintiff has a severe injury to the left ankle resulting in industrial loss of use of the left leg. Plaintiff has industrial capacity of all other limbs but is prevented from exercising said capacity by reason of the left leg injury. Plaintiff does not meet the statutory definition of total and permanent disability."

Miller appealed to the Workmen's Compensation Appeal Board which affirmed the hearing referee by decision dated June 3, 1969, stating:

"Plaintiff may be totally disabled, but his loss of industrial use is completely confined to one leg, not

[1] As renumbered by PA 1969, No 317. Prior to 1969, this was Part II, § 10(b)(7) of the Workmen's Compensation Act. MCLA § 412.10(b)(7) (Stat Ann 1968 Rev § 17.160[b][7]).

both, and thus plaintiff has failed to come within the definition prerequisite to qualify for additional benefits provided by law."

The Court of Appeals granted Miller's application for leave to appeal and unanimously reversed. (26 Mich App 185.) We granted defendants' application for leave to appeal. (384 Mich 783.)

Plaintiff argues that the economic reality of his incapacitation should control determination of total loss of industrial use of both legs, rather than requiring anatomical injury to both legs before loss of industrial use can be found. He relies on *Paulson* v. *Muskegon Heights Tile Company* (1963), 371 Mich 312.

Plaintiff also claims that, since he has lost total industrial use of his legs, a classification which denies him the same compensation as persons who have lost such use through direct physical injury is arbitrary and violates his right to equal protection of the law. This contention was not reached by the Court of Appeals and we do not consider it since we conclude plaintiff has failed to establish in fact the loss of industrial use of both legs.

Defendants, also citing *Paulson, supra,* contend that, in the absence of physical injury to the right leg, plaintiff cannot, as a matter of law, have suffered total loss of industrial use of *both legs.* They contend that this "schedule loss payment" should only be made if plaintiff falls within the statutory definition.

## *LOSS OF INDUSTRIAL USE*

(a) *History of the Term.*

In *Rench* v. *Kalamazoo Stove & Furnace Co.* (1938), 286 Mich 314, plaintiff suffered an injury which resulted in the loss of both of his thumbs and

his first and second fingers of the right hand at the second joints, and his first, second and third fingers of the left hand at the middle joints. Plaintiff sought recovery for the loss of both of his hands which had rendered him totally and permanently disabled. This Court said (p 320):

"It is argued that we should not permit recovery for the loss of industrial use of the hands *in absence of definite legislative enactment.* However, our holding of industrial loss of use is well established. See *Lovalo* [v. *Michigan Stamping Co.* (1918), 202 Mich 85], *Powers* [v. *Motor Wheel Corporation* (1931), 252 Mich 639] and *West* [v. *Postum Co., Inc.* (1932), 260 Mich 545] *Cases, supra,* and also *Suggs* v. *Ternstedt Manfg. Co.* [1925], 232 Mich 599; also *Lindhout* v. *Brochu & Hass* [1931], 255 Mich 234.

"As in the *Powers Case, supra,* the determination of the loss by plaintiff of the industrial use of his hands is one of fact and, there being testimony to support such a determination, the findings of the department are binding upon us." (Emphasis added.)

In *Rupp* v. *Hutter Construction Co.* (1939), 288 Mich 105, the second, third, fourth, and fifth fingers and half of the metacarpal bones of these fingers had been removed from plaintiff's right hand. The thumb remained uninjured. On the left hand, the third, fourth and fifth fingers were disarticulated at the joint of the metacarpal bones, and the upper two and part of the third phalanges of the index finger were amputated. In response to defendant's claim that because plaintiff could articulate the thumb so as to touch the stump of the finger of the left hand, he had not lost the use of that hand and, therefore, could not claim total disability for the loss of the hands, this Court said (p 106):

"The cases involving the loss of fingers and the industrial use of hands are assembled and distinguished in *Rench* v. *Kalamazoo Stove & Furnace Co.* [1938], 286 Mich 314, wherein it was held that the determination of the loss of the industrial use of an employee's hands is one of fact and, where there is supporting testimony, the finding of the department will not be disturbed. Such finding was supported not only by the physical appearance of the remnants of the hands, but by testimony."

At the time the above cases were decided, the Workmen's Compensation Act had classified specific losses and total and permanent disability as a deemed or conclusively presumed disability in the following language:

"The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any of two [2] thereof, shall constitute total and permanent disability, to be compensated according to the provisions of section nine [9]." CL 1929, § 8426.

By PA 1954, No 175, the definition of "total and permanent disability" was changed to read as follows:

"Total and permanent disability, compensation for which is provided in section 9 hereof, means:

"(1) Total and permanent loss of sight of both eyes.

"(2) Loss of both legs or both feet at or above the ankle.

"(3) Loss of both arms or both hands at or above the wrist.

"(4) Loss of any 2 of the members or faculties enumerated in (1), (2) or (3).

"(5) Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.

"(6) Incurable insanity or imbecility."

Because specific places of loss were spelled out in Act 175—at or above the wrist, at or above the ankle (indicating amputation), and paralysis of legs or arms was specifically mentioned—this new language was generally regarded as not including "loss of industrial use" of two extremities. It was so held in *Clark* v. *Chrysler Corporation* (1966), 377 Mich 140.

PA 1956, No 195, restored "loss of industrial use" as a measure of total and permanent disability by adding to the above six classifications the following: "(7) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; * * * ." Since this Court had decided a number of cases in which the term "loss of industrial use" was used, even though not appearing in the Workmen's Compensation Act, we conclude that the legislature intended to restore this Court's decisions defining the "loss of industrial use" test to the workmen's compensation law by Act 195.

*(b) Nature of Specific Loss Recoveries.*

In *Hutsko* v. *Chrysler Corporation* (1968), 381 Mich 99, this Court said (p 102):

"Michigan has 2 types of workmen's compensation benefits, wage loss disability payments and specific or schedule loss payments. The first type is dependent upon proof of a wage loss resulting from an industrial injury. It is a differential payment computed on what wage the injured workman is able to earn after his injury and the wage he was earning at the time he was injured. If there is no difference he receives no benefits. The second type is a specific loss benefit paid under a schedule of losses applicable to certain designated organs or anatomical members. To this benefit the injured workman is entitled during the period provided in the schedule, *irrespective of any wages he receives*

*whether greater or less than those he received at the time of his injury."* (Emphasis added.)

A review of specific loss cases reveals that loss of "industrial use" is a question of fact. The test of that fact has been to equate such a loss with the physical or anatomical loss of use of a member of the body rather than with an economic reality test. See, *Shumate* v. *American Stamping Company* (1959), 357 Mich 689; *Paulson* v. *Muskegon Heights Tile Company, supra; Clark* v. *Chrysler Corporation, supra; Liesinger* v. *Owens-Ames-Kimball Company* (1966), 377 Mich 158; *Armstrong* v. *Chrysler Corporation* (1969), 382 Mich 274; *Lewandowski* v. *Alpena Power Company* (1969), 382 Mich 274; and *Wronski* v. *Chrysler Corporation* (1969), 382 Mich 274. If "loss of use" is established, recovery follows even though there are no economic consequences from the loss. See *Hutsko* v. *Chrysler Corporation, supra,* pp 102–104.

(c) *"Loss of Industrial Use" Defined.*

In *Paulson* v. *Muskegon Heights Tile Company, supra,* plaintiff suffered a punctured bladder and a fractured pelvis. The resulting tear in the urinary tract system permitted urine to escape into surrounding tissues. Due to constant urine drainage from the bladder through sinus tracts, a disability resulted from the presence of the fistulous sinus tract with pain resulting from any pressure being borne by either leg. This Court said (p 319):

"We construe the statute to mean that permanent and total loss of industrial use, insofar as the facts in this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible."

In *Belencan* v. *J. D. Candler Roofing Company*
(1970), 383 Mich 732, plaintiff lost a leg due to his
employment and later lost his other leg not due
to his employment.   This Court held he was not
entitled to total and permanent disability benefits
for the loss of two legs.   In *Whitt* v. *Ford Motor
Company* (1970), 383 Mich 726, plaintiff lost his
right eye at work and five years later lost the sight
of the other eye due to a nonoccupational accident.
In both *Whitt* and *Belencan,* the issue was whether
a work-related injury and a later nonwork related
injury which together resulted in total disabilities
within the meaning of the statute[2] entitled a work-
man to the schedule compensation for total and
permanent disability.   This Court held that injuries
to be compensable under the workmen's compensa-
tion law must arise out of and in the course of the
claimant's employment.   Total and permanent dis-
ability benefits were denied.

The basic issue in connection with claims of total
and permanent disability is one of fact.   Each claim
must be weighed carefully.   Some claims will fail
and some will prevail, depending upon the quality
of the proofs presented at the hearing.   When the
limb cannot be used industrially simply because of
other disabling infirmities, it would do violence to
the statutory intent to hold that the industrial loss
of use of such limb has occurred.

*(d)   Fact Finding as to "Loss of Industrial Use".*

In the present case, it is undisputed that there
is nothing wrong with plaintiff's right leg.   He has
suffered no injury to it.   It is unimpaired.   It is
contended, however, that because plaintiff has lost
the industrial use of his left leg, he has also lost
the industrial use of both legs.

---

[2] MCLA § 418.361(2)   (Stat Ann 1971 Cum Supp § 17.237[361]
[2]).

In the present case, the Court of Appeals improperly made findings of fact as follows (pp 188, 189):

"It is undisputed that the plaintiff has lost the industrial use of his left leg. It is also undisputed that there is no physical injury to the right leg, although since it is used to protect the left leg, it weakens and tires more than it did before the accident. At the hearing, evidence revealed that the plaintiff, who has no clerical education or training, can walk for only 15 or 20 minutes or about half a mile in distance if the ground is even and smooth. He can only stand in one place for five minutes and then has to elevate the left leg for about 15 or 20 minutes to alleviate the pain. He is never free of pain in the left leg. He can maintain a seated position for about 30 minutes before he must, again, elevate the left leg. Plaintiff cannot squat, arise from a supine position, kneel, climb a ladder, or descend stairs in a normal manner. Plaintiff is unable to drive a standard-shift automobile, although he is able to drive a vehicle with an automatic transmission. His left ankle swells each day to an inch or an inch and one-half above its normal size. It is never pain-free."

Based upon the testimony in this case, the Court of Appeals might also have found that plaintiff weighed 300 pounds at the time of the hearing and during the last ten years has weighed as much as 377 pounds; that his doctor told him he should lose weight; that for two years he worked at a friend's garage where he answered the phone and kept track of car parts.

The Court of Appeals went on to find as follows (p 194):

"From the peculiar nature of a leg, its loss has a much more disastrous effect upon the loser than loss of any other one of two related organs of the

body including the eyes, ears, and hands.  Especially is this so where, as here, the loss is of such a nature as will not allow a replacement of the limb which, because of its inflexibility, and painful and damaged state, renders the other leg, certainly for employment, useless.  The effect of the admittedly permanently disabled left leg is such as to cause the industrial loss of the right leg."

This conclusion ignores MCLA § 418.361(1)(k) (Stat Ann 1971 Cum Supp § 17.237[361][1][k]),[3] which provides for the specific loss of one leg.  If loss of one leg is to constitute loss of two legs, this provision would become meaningless.

The Workmen's Compensation Board of Appeals is the final fact finder in cases before it.  MCLA § 418.861; (Stat Ann 1971 Cum Supp § 17.237[861]); *Coates* v. *Continental Motors Corporation* (1964), 373 Mich 461, 466; *Shumate* v. *American Stamping Co., supra* 691; *Zuhlke* v. *Lee & Cady* (1933), 263 Mich 78.

In the present case, the determination by the Board of Appeals was a final determination of fact. The Court of Appeals is reversed.  The decision of the Board of Appeals is affirmed.  Costs to defendants.

T. M. KAVANAGH, C. J., and BLACK, T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.

---

[3] Formerly Part II, § 10(a)(15); MCLA § 412.10(a)(15) (Stat Ann 1968 Rev § 17.160[a][15]).