KOSCHAY *v.* BARNETT PONTIAC, INC.

1. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—QUESTION OF LAW—QUESTION OF FACT.

The question, under Workmen's Compensation Act, whether a workman is *injured by accident arising out of and in the course of his employment* may be a question of law or one primarily of fact, or a mixed question of law and fact.

2. WORKMEN'S COMPENSATION—COMPENSABLE INJURY—QUESTION OF FACT—WORKMEN'S COMPENSATION APPEAL BOARD.

The question whether plaintiff suffered a compensable injury became by the proofs a pure question of fact; therefore, the Workmen's Compensation Appeal Board, depending upon its view of such proofs, was entitled to conclude either way; that the claimant's disability was compensable, that is, work-connected, or that it was not.

3. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL BOARD—DENIAL OF AWARD—APPEAL AND ERROR—QUESTION OF FACT—AWARD AS A MATTER OF LAW.

Workmen's compensation claimant, after the appeal board has found against him, must to sustain his appeal establish to the satisfaction of the Michigan Supreme Court that there was no question of fact and that the proof entitled him to an award *as a matter of law* and there is no alternative; and no room for contention that the appeal board reached its conclusion without supporting proof or permissible inference from proof.

4. WORKMEN'S COMPENSATION—WORKMEN'S COMPENSATION APPEAL BOARD—FUNCTION—FINDINGS OF FACTS.

The primary function of the Workmen's Compensation Appeal Board is that of finding what to it are the controlling facts.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 58 Am Jur, Workmen's Compensation § 461.
[4] 58 Am Jur, Workmen's Compensation § 522 *et seq.*

Appeal from Court of Appeals, Division 2, Bronson, P. J., and McGregor and Danhof, JJ., denying application for leave to appeal from an order of the Workmen's Compensation Appeal Board. Submitted September 16, 1971. (No. 44 June Term 1971, Docket No. 53,056.) Decided November 9, 1971.

Joseph M. Koschay presented a claim against Barnett Pontiac, Inc., and Universal Underwriters for workmen's compensation. Award denied. Court of Appeals denied plaintiff's application for leave to appeal. Plaintiff appeals. Affirmed.

*Rothe, Marston, Mazey, Sach, O'Connell, Nunn & Freid, P. C.,* for plaintiff.

*Plunkett, Cooney, Rutt & Peacock* (by *Edward K. Pedersen* and *Jeannette A. Paskin*), for defendants.

PER CURIAM. Submission of this granted appeal from the administrative *denial* of workmen's compensation has concentrated our attention, not upon the merits of plaintiff's claim but upon a developing misunderstanding of the statutorily assigned function of the appeal board and that of the appellate courts when review is obtained pursuant to original § 12 of procedural part 3 of the statute.[1] The issue here is the same as in 1919 *Borck* v. *Simon J.*

---

[1] Excepting for 1943 transfer of pertinent duty from the Industrial Accident Board to the Compensation Commission, and excepting as revised by PA 1969, No 317 *after* plaintiff's claim had been tried to the referee and his appeal to the board had been taken, § 12 read for 57 years this way:

"Sec. 12.  The findings of fact made by the compensation commission acting within its powers, shall, in the absence of fraud, be conclusive, but the supreme court shall have power to review questions of law involved in any final decision or determination of said compensation commission:  *  *  *  ." (MCLA § 413.12 [Stat Ann 1968 Rev § 17.186]).

*Murphy Co.,* 205 Mich 472, where the appellant claimant challenged the Industrial Accident Board's opinion. That opinion was quoted by the Court at 473:

" 'Without discussing the testimony which is very long, the board finds:

" '(*a*) That the applicant, at the time he fell down the elevator shaft in the Marquette building, was not at said building on any business of his employer, but that he was there entirely upon his own initiative, and evidently because he had no special work to do, or thought he had no special work to do, in the Telegraph building where he was working, and idly went over to the Marquette building through some idea of his own.

" '(*b*) That at the time he suffered the accidental, personal injury which he did suffer, he was not in the course of his employment and that the accident did not arise out of or in the course of the employment of the applicant.' "

Having considered appellant *Borck's* position that (*Borck* at 474):

" 'In this particular case, to justify a reversal, we do not deem it necessary for the court to find that there is *no* evidence supporting the conclusion of the board, although we believe such to be the situation, as will be hereinafter pointed out.' ";

the Court proceeded to posit that which has become a commonplace upon judicial review of administrative decisions granting or denying workmen's compensation. It is that "The question whether a workman is injured by an accident arising out of and in the course of his employment may be a question of law or one primarily of fact, or a mixed question of law and fact."

Starting from that firm hypothesis, we find instantly that the question whether Mr. Koschay suffered a compensable injury became by the proofs a pure question of fact. The appeal board therefore, depending upon its view of such proofs, was entitled to conclude either way; that the claimant's disability was compensable, that is, work-connected, or that it was not. The board found against the burden-bearing claimant. Now that he is here for judicial review, he must to sustain his appeal establish to our satisfaction that there was no question of fact and that the proof entitled him to an award *as a matter of law.* There is no alternative; no room as we shall see for contention that the appeal board reached its conclusion without supporting proof or permissible inference from proof.

In that regard his situation is much more difficult on appeal than it would have been had the board found factually what it expressly said it could not. Now for the findings of fact of the appeal board, apart from the purely legal and procedural discussion appearing in its opinion.

"Plaintiff was a 51-year-old married man with only his wife as a dependent at the time of the hearing. He claimed disability due to a heart condition on May 18, 1966, allegedly resulting from 'excessive and continual heavy work, emotional stress and strain, long hours, harassment and related conditions.'

"Plaintiff's long career in the used car business began in July of 1940 as the sole owner of such a business which he operated until World War II when he worked for Briggs Manufacturing Company upon the government's request to get into essential work. He later went to the service for five months and then returned to the used car business in which he stayed until 1954 when he went into the bar business for nine months after which he sold out

and entered the automobile business again and continued until 1960 when he went to work for Woody Pontiac as a new car salesman.

"In July of 1961 plaintiff went back into the used car business and stayed there until December of 1964 when he went to work for Canfield Motor Sales, a Dodge dealership where he sold both new and used cars.

"In March of 1966 plaintiff went to work for Barnett Pontiac, the defendant in this case, as a used car manager appraising the used cars being traded in and getting them ready for retail and wholesale. He had a used car salesman and a porter working under him and he was requested to report to his boss once a month.

"Plaintiff's working hours were Monday, Tuesdays and Thursdays from 9:00 am to 9:00 pm and Wednesdays, Fridays and Saturdays from 9:00 am to 6:00 pm. Business volume was approximately 2,500 cars a year and on a busy day, plaintiff would appraise a maximum of 30 cars. He would show the used cars daily to the three to six dealers stopping to purchase cars for wholesale, bargain with them, arrive at a figure, write out a sales order and take their money or check. During the two months with defendant, plaintiff wholesaled 90 cars each month.

"Plaintiff's job in addition to appraising the cars also involved getting them ready for sale, sending them to the bump shop for needed repairs, driving them and keeping records on the sales.

"After working for about two months for defendant, the morning of May 18, 1966, just before getting up for breakfast, plaintiff complained of severe chest pains and was taken to the hospital where he remained for 22 days for the treatment of an apparent heart attack.

"Plaintiff returned to work for defendant as a new car salesman on September 28, 1966, and

worked until January 6, 1967, when he was discharged because of his refusal to purchase a demonstrator. * * *

"Plaintiff testified that during his long years as the sole owner of a used car business he worked at least as hard as in his job with defendant, that his hours were longer and his responsibilities greater as an entrepreneur than as an employee for defendant.

"Some of plaintiff's former colleagues working under his supervision or supervising him at defendant's dealership testified that there was nothing but harmony among all employees including the boss, that plaintiff was free to take an uninterrupted lunch break and that he was never engaged in any arguments or altercations or subjected to any harassment during his two months with defendant.

"There are indeed very few jobs in which an employee is almost completely free from supervision, has only two people working under him and does not have to account to his boss more than once a month and the strongest criticism he ever gets from him during the month is that he spends too much time in appraising the cars.

"The medical evidence consists of the testimony by Dr. Helen H. Winkler and Dr. James M. Kennary.

"Neither medical expert could establish a relation between the infarction and any emotional stress or strain during plaintiff's brief employment with defendant. Dr. Winkler admitted that she did not conduct tests which could have determined the nature of plaintiff's condition and that many factors enter in the development of coronary artery disease such as heredity, diet, sex, geography, age and smoking as well as emotional strain or physical stress.

"Doctor Kennary's testimony did not add much more evidentiary value to support plaintiff's theory. At one point he even admitted that he did not have a

history of emotional stress and strain that may have occurred on May 18, 1966, the day of plaintiff's heart attack except his efforts in getting out of bed.

"The record does not adequately establish plaintiff's continued disability and we find that whatever disability he may still have is not causally connected with his employment. We say this whether approached as a Part VII injury or under Sec. 1, Part II with application of *Zaremba* v. *Chrysler Corporation* (1966), 377 Mich 226, because we cannot find that plaintiff was doing normal work in a normal way and that particular work activity precipitated the heart attack. No condition of employment here occasioned injury and disability.

"After careful review of the entire voluminous record we are unable to find that plaintiff-appellee received a personal injury arising out of and in the course of his employment by the defendant-appellant on May 18, 1966."

Leave to appeal would not have been granted in this case but for insistence of appellant's counsel that no testimony supported the factual findings of the board. Here counsel are right in certain not overly significant instances, yet wrong about the controlling whole of the board's findings which we find concentrated in the last two paragraphs quoted above. For instance plaintiff's medical witness, Dr. Helen H. Winkler, did not *admit* that she did not conduct the tests mentioned by the board that were put to her in the form of a question by defendants' counsel. She did admit, in the course of her lengthy cross-examination, that there were several reasonable hypotheses and possibilities squaring with the board's subsequent conclusion of absence of a connection between plaintiff's infarcted heart condition and any stress or strain attributable to his "brief employment with the defendant."; adhering at the same time to her affirmative opinion of causal

connection. The situation suggests, not an order of reversal or remand, but rather a respectful reminder that the appeal board give closer attention to the accuracy of its findings from the record, and that it specify them with firm precision, so that unnecessary appeals therefrom are eliminated.

The primary function of the appeal board is that of finding what to it are the controlling facts. It is plain from its opinion that the board reached understandable conclusion that there was no proof persuasive enough to sustain the plaintiff's burden of making a *prima facie* case of right to an award. It is equally plain that the board could not, or at least did not, accept Dr. Winkler's opinions, whether same did or did not tend to establish the claimed compensable nexus. Too, the board must have known that it, the appointed fact-finder in workmen's compensation cases, was not obliged to accept or extend verity to any expert opinion and that all it needed to say about Dr. Winkler's opinions was that the facts offered to support them were too weak. In short, the board can, we believe, bring these cases to earlier determinations by concentrating its opinions more upon its fact-finding duties and a little less upon judicial decisions which, after all, must be read and applied according to and within the context of the facts each has presented as a basis for its declared rule or rules of law.

For the appeal board, equally here, the early admonitions of Justices COOLEY, CAMPBELL, MARSTON and GRAVES (*Larzelere* v. *Starkweather* [1878], 38 Mich 96, 101) are worthy of regular reading anew:

"In the preparation of an opinion, the facts of the case are in mind. It is prepared with reference to such facts, and when considered in connection therewith, will generally be found satisfactory. When, however, an attempt is made to pick out

particular parts or sentences, and apply them indiscriminately in other cases, nothing but confusion and disaster will be likely to follow. In other words, the opinion and decision of a court must be read and examined as a whole in the light of the facts upon which it was based. They are the foundation of the entire structure which cannot with safety be used without reference to them."

Affirmed.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred.