MARTIN v FORD MOTOR COMPANY

Docket No. 57735. Argued March 1, 1977 (Calendar No. 1).—Decided October 24, 1977.

Harriett R. Martin claimed workmen's compensation benefits against Ford Motor Company and the Second Injury Fund for disablement from an occupational disease. The Workmen's Compensation Appeal Board found that the plaintiff was totally and permanently disabled because of a back ailment, but that she had not suffered the loss of industrial use of her legs and left arm, thus relieving the Second Injury Fund of any liability for differential benefits. The Court of Appeals, Quinn and M. J. Kelly, JJ. (T. M. Burns, P. J., dissenting), affirmed (Docket No. 22005). Plaintiff appeals. *Held:*

1. Neither defendant contended either before the Workmen's Compensation Appeal Board or the Court of Appeals that the plaintiff failed to prove both industrial loss of legs and arm, and a causal link between her work and the asserted industrial loss. There is substantial evidence in the record that the plaintiff suffered the loss of industrial use of legs and arm. It affirmatively appears that the Workmen's Compensation Appeal Board accepted as credible the testimony of the witnesses who presented that evidence and there is no contrary evidence. Therefore, the decision of the Workmen's Compensation Appeal Board is not evidentially supported, and it is reversed and the referee's award of differential benefits is reinstated.

2. It is of no importance that plaintiff suffered injuries as a child and as an adult which were not work-related. The Workmen's Compensation Appeal Board found that she was continually disabled due to her back condition which was *aggravated*

REFERENCES FOR POINTS IN HEADNOTES

[1] 82 Am Jur 2d, Workmen's Compensation § 344.

[2] 82 Am Jur 2d, Workmen's Compensation § 630.

[3, 7–9] 82 Am Jur 2d, Workmen's Compensation §§ 339, 340.

[4, 5] 82 Am Jur 2d, Workmen's Compensation § 507.

Pleading aggravation of pre-existing physical condition. 32 ALR2d 1447.

[6] 81 Am Jur 2d, Workmen's Compensation § 11.

[7–9] 82 Am Jur 2d, Workmen's Compensation §§ 350–352.

*by her work.* Her condition may very well have deteriorated following the termination of her employment and her disability may have become more pronounced as *sequelae* of three additional operations. These *sequelae* are themselves work-related because they were occasioned by an effort to relieve the disability found to have been aggravated by her work.

3. The central question is whether the plaintiff has lost the industrial use of her legs and arm. If she has, that loss is clearly connected to her general disability found by the Workmen's Compensation Appeal Board to be work-related. It is not necessary that either leg be injured at all and therefore it is of no consequence that one of the doctors could not find any wasting in the legs nor evidence of muscle weakness.

4. On this record, when plaintiff uses one or both of her legs for more than a brief span of time she suffers pain that prevents the use of her legs in industry. In these circumstances the Workmen's Compensation Appeal Board is not at liberty, through selective fact-finding, to substitute its judgment of what constitutes sound public policy regarding payment of differential benefits for loss of industrial use of limbs for the legislatively ordained policy as elucidated in the opinions of the Court.

Reversed and the order of the referee is reinstated.

Justice Coleman, joined by Justices Fitzgerald and Ryan, dissented. She would affirm for the following reasons:

1. There can be total and permanent loss of industrial use of both legs if using the legs triggers an employment-related injury in any part of the body that causes pain or other condition that prevents use of both legs in industry. To recover for the loss of industrial use of her legs and arm plaintiff must establish a relationship between that loss and her employment injury.

2. Plaintiff's work at Ford Motor Company aggravated a pre-existing back injury for which she is already being compensated. However, the back was injured again after her employment ended. Among eight injuries to plaintiff's back only one aggravating trauma, the strain caused by filing, was attributed to her employer. Her burden was to show that the *work-related* aggravation resulted in the loss of industrial use of her legs or a leg and an arm. The conclusive findings of fact of the Workmen's Compensation Appeal Board were that the plaintiff did not carry the burden of proof.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—DIFFERENTIAL BENEFITS—SECOND IN-
JURY FUND.

The Worker's Disability Compensation Act provides for an an-
nual adjustment in the maximum weekly rate of compensation
to reflect changes in the average weekly wage paid employed
workers; an upward adjustment in the maximum rate benefits
only workers subsequently injured, except that a worker who is
totally and permanently disabled is entitled to receive, from
the Second Injury Fund, differential benefits reflecting post-
injury adjustments (MCL 418.355; MSA 17.237[355]).

2. WORKMEN'S COMPENSATION—DIFFERENTIAL BENEFITS.

A referee's determination awarding differential workmen's com-
pensation benefits should be affirmed where there is substantial
evidence that the claimant suffered the loss of industrial use of
legs and arms, it affirmatively appears that the Workmen's
Compensation Appeal Board accepted as credible the testimony
of the witnesses who presented such evidence and there is no
contrary evidence (MCL 418.355; MSA 17.237[355]).

3. WORKMEN'S COMPENSATION—DISABILITY—BACK INJURY.

A person with a bad back may be able to work in a garden and
may have energy for many things even though he cannot
function in industry under the terms of the Worker's Disability
Compensation Act.

4. WORKMEN'S COMPENSATION—WORK-RELATED INJURY—AGGRAVA-
TION.

It is of no importance in a claim for differential workmen's
compensation benefits that the claimant suffered back injuries
as a child and as an adult which were not work-related where
the Workmen's Compensation Appeal Board found that the
worker was continually disabled due to the back condition
which was "aggravated by her work" (MCL 418.355; MSA
17.237[355]).

5. WORKMEN'S COMPENSATION—WORK-RELATED INJURY—LOSS OF IN-
DUSTRIAL USE.

A claim for differential workmen's compensation benefits based
on the loss of industrial use of legs and an arm as a result of
employment-related aggravation of the claimant's pre-existing
back condition does not require that either leg be injured at all;
therefore it is of no consequence that a physician testified that
he could not find any wasting in the claimant's legs nor
evidence of muscle weakness (MCL 418.355; MSA 17.237[355]).

6. WORKMEN'S COMPENSATION—APPEAL BOARD—FINDINGS OF FACT—
   DIFFERENTIAL BENEFITS.

   The Workmen's Compensation Appeal Board is not at liberty,
   through selective fact-finding, to substitute its judgment of
   what constitutes sound public policy regarding payment of
   differential benefits for loss of industrial use of limbs for the
   legislative policy as interpreted in the decisions of the Court
   (MCL 418.355; MSA 17.237[355]).

DISSENTING OPINION BY COLEMAN, J.

FITZGERALD and RYAN, JJ.

7. WORKMEN'S COMPENSATION—LOSS OF INDUSTRIAL USE—LEGS—PER-
   MANENT AND TOTAL DISABILITY.

   *The loss of industrial use of a leg does not occur when the leg
   cannot be used industrially simply because of other disabling
   infirmities (MCL 418.361; MSA 17.237[361]).*

8. WORKMEN'S COMPENSATION—LOSS OF INDUSTRIAL USE—LEGS—PER-
   MANENT AND TOTAL DISABILITY.

   *There can be total and permanent loss of industrial use of legs if
   using the legs triggers an employment-related injury in any
   part of the body that causes pain or other condition that
   prevents use of both legs in industry (MCL 418.361; MSA
   17.237[361]).*

9. WORKMEN'S COMPENSATION—LOSS OF INDUSTRIAL USE—LEGS—PER-
   MANENT AND TOTAL DISABILITY.

   *A worker must establish a relationship between the loss of
   industrial use of legs and an employment injury to recover
   workmen's compensation benefits for permanent and total dis-
   ability (MCL 418.361; MSA 17.237[361]).*

*Kelman, Loria, Downing, Schneider & Simpson*
for plaintiff.

*Patrick J. Welch* for Ford Motor Company.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Joseph M.
Binno,* Assistant Attorney General, for Second
Injury Fund.

LEVIN, J. Harriett R. Martin was awarded gen-

eral compensation benefits on the referee's determination that she had suffered a work-related disability. The Worker's Compensation Appeal Board affirmed that determination, finding that she was "continually disabled". That determination was not appealed and she is, therefore, entitled to general compensation benefits from her employer, Ford Motor Company, for the duration of the disability.

Since 1965 the act has provided for an annual adjustment in the maximum weekly rate of compensation to reflect changes in the average weekly wage paid employed workers. An upward adjustment in the maximum rate benefits only workers subsequently injured, except that a worker who is totally and permanently disabled is entitled to receive, from the Second Injury Fund, differential benefits reflecting post-injury adjustments.[1]

Martin claims that in addition to the general compensation benefits, payable by her employer, she is entitled to differential benefits from the Second Injury Fund to reflect increases since 1966, the year of injury, in the average weekly wage paid employed workers.[2] The issue is whether Martin's disability is total and permanent entitling her to differential benefits.[3]

The referee also determined that Martin's disability was total and permanent on a finding that she had lost the industrial use of both legs and

[1] 1965 PA 44, § 9; 1948 CL 412.9; MSA 17.159; now MCLA 418.355; MSA 17.237(355) (adjustments in the maximum weekly rate of compensation), and MCLA 418.521(2); MSA 17.237(521)(2) (payments by the Second Injury Fund).

[2] The referee ordered differential benefits of $5 per week for 1969, $11 per week for 1970 and $15 per week for 1971, subject to additional adjustments in later years as provided for in the act.

[3] Ford did not file a brief in the Court of Appeals or an answer in response to Martin's application for leave to appeal to this Court. It signed, together with the Second Injury Fund, a brief in this Court.

had also lost the use of one leg and one arm. In reversing that determination the WCAB declared that the evidence of industrial loss of both legs and of one arm was "so scarce that it is utterly inadequate to support a finding of total and permanent disability".[4] The Court of Appeals affirmed, stating that "[t]here is record support" for the WCAB's finding.[5]

My colleague states that the WCAB should be affirmed because Martin failed "to show that the *work-related* aggravation [of her pre-existing back injury] resulted in the loss of industrial use of her legs or a leg and an arm" (emphasis in original).

Neither Ford nor the Second Injury Fund contended either before the WCAB or the Court of Appeals that Martin had failed to show a causal link between her work and the loss of industrial use of legs and an arm. In the WCAB they claimed that the referee erred in finding industrial loss and in finding a "causal relationship between the employment and plaintiff's back [general] disability". In the Court of Appeals the contention was that there was evidence to support the WCAB's determination that Martin had not suffered the industrial loss of legs and arm; it was not claimed

---

[4] The WCAB also declared, similarly:

"[T]he record does not support a finding of total and permanent disability within the meaning of the act.

\* \* \*

"Plaintiff just has not met her burden of proving that the use of her lower extremities triggers 'pain or other conditions that prevents use of both legs in industry.' "

The phrase quoted by the WCAB is from *Burke v Ontonagon County Road Commission,* 391 Mich 103, 114; 214 NW2d 797 (1974).

[5] Judge T. M. Burns dissented in the Court of Appeals and said:

"Not only does the record indicate that there was evidence to support a finding of total and permanent disability, but as the board's minority opinion points out, the unrebutted proofs show that plaintiff had in fact suffered the industrial loss of the lower limbs and the left arm, as found by the referee."

alternatively that there was no causal relationship between her employment and the asserted industrial loss.

Ford and the Second Injury Fund contend for the first time in their briefs with this Court that Martin failed to prove both industrial loss of legs and arm and a causal connection between her employment and such asserted loss.[6]

We reverse the WCAB and direct reinstatement of the referee's determination awarding differential benefits because its determination is not evidentially supported: there is substantial record evidence that Martin suffered the loss of industrial use of legs and arm, it affirmatively appears that the WCAB accepted as credible the testimony of the witnesses who presented such evidence, and there is no contrary evidence.

I

The act provides that the Second Injury Fund shall pay any totally and permanently disabled person the difference between the current schedule of benefits and any lesser amount he is receiving from his employer based on the schedule of benefits in effect at the time of his injury.[7]

The act defines "total and permanent disability" as including "permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm".[8]

In *Burke v Ontonagon County Road Commis-*

---

[6] In this connection we note that our grant of leave was limited to the issue posited in Martin's application for leave to appeal of whether all the evidence demonstrated that Martin had suffered loss of industrial use so that the WCAB should have awarded differential benefits.

[7] *See* fn 1, *supra.*

[8] 1948 CL 412.10; MSA 17.160; now MCLA 418.361; MSA 17.237(361).

*sion,* 391 Mich 103; 214 NW2d 797 (1974), this Court reviewed earlier decisions and said:

"In summary, *Paulson [v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963)] and *Lockwood [v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970)] lay down two tests for determining whether an employment-related injury statutorily causes the 'permanent and total loss of industrial use of both legs':

"1. It is not necessary that both legs or either leg be injured at all.

"2. The industrial loss of use of both legs may result from 'leg-connected disabling pain * * * so severe as to make use of the legs in industry practically impossible' even though that pain is generated from an injury elsewhere in the body *(Paulson)* or it may result 'when a non-leg malady is triggered by use of the legs and it is that condition which prevents use of the legs in industry' *(Lockwood).*

"*Miller [v Sullivan Milk Products, Inc,* 385 Mich 659; 189 NW2d 304 (1971)] rules, while *Paulson* and *Lockwood* take for granted that:

"The 'leg-connected disabling pain' or the 'non-leg malady' must be the consequence of an employment-related injury." *Id,* pp 110–111.

The Court then "amplif[ied] and consolidate[d] the tests in *Paulson* and *Lockwood,* as follows":

"There is permanent and total loss of industrial use of both legs where, *inter alia,*

"1. An employment-related injury in one or both legs causes pain or other condition that prevents use of both legs in industry.

"2. The use of one or both legs, whether or not injured, triggers an employment-related injury or malady in any part of the body, including one or both legs, that causes pain or other condition that prevents use of both legs in industry." *Id,* p 114.

Subsequently, in *Triplett v Chrysler Corp,* 394

Mich 518, 520; 232 NW2d 168 (1975), where the worker was unable to walk any distance because of emphysema, the Court declared that it was not intended that the *Burke* rule be read to include "those cases in which the loss of industrial use of the legs is caused by a generally debilitating disease, which affects bodily functions in much the same way and causes a general decline in those bodily functions".[9]

## II

Harriett Martin worked for Ford Motor Company as a records clerk for over ten years. Her last day of work was May 31, 1966 when she was approximately 49 years old and she has not worked since that date.

Martin's back troubles began as a child with a toboggan accident and continued with an automobile accident in 1957 or 1958. As a result of an incident at home in early 1964, she underwent surgery for a herniated disc, returning to work a few months later. Shortly thereafter she was in another automobile accident which caused her severe back pain; she returned to work in October, 1964. She experienced back pain but continued to work despite her discomfort until March, 1965 when she was admitted to a hospital. In April another back operation was performed. She returned to work in July. She said that she felt fine

[9] The Court elaborated:

"We hold that there is not permanent and total loss of industrial use of both legs where the use of one or both legs, whether or not injured, triggers an employment-related malady, such as one of the heart, lung, or kidneys, which by itself or in connection with any physical exertion reacts to affect all functions and activities of the body more or less in the same manner as it affects the use of the legs, even though it does prevent use of both legs in industry." *Triplett v Chrysler Corp*, 394 Mich 518, 522; 232 NW2d 168 (1975).

until she was assigned to filing which, because of the body movements required, caused her pain. She was given favored work but then returned to filing and again experienced severe pain in her back and leg. She was hospitalized 3-1/2 weeks for physical therapy. While at home in April, 1966 she experienced pain while planting rose bushes. She returned to work for the last time on May 9. She was unable to work more than three to five hours per day because of pain in her back and leg. Following the termination of her employment she had a painful incident while shopping. There were three more operations. She testified to burning pain in her left leg and left arm, and that she cannot walk more than a block, and can stand for only half an hour.

Four physicians testified. Martin called Drs. Frank Cullis, William C. Schaefer and Otonaz Vaitos. Ford called Dr. George J. Straschnov. All four physicians agreed that Martin was disabled. The three doctors called by Martin related her disability to her employment without hesitation.

Ford's witness, Dr. Straschnov, acknowledged that bending would aggravate her back condition and that the extent of the aggravation would depend on the extent of the bending and related activity. He said he could not find any wasting of the legs nor evidence of muscle weakness.

Dr. Schaefer, a treating physician, described the occasions for her visits to him and the treatment but was not questioned regarding loss of industrial use.

The WCAB summarized Dr. Cullis' testimony as follows:

"Dr. Frank Cullis testified that prior to surgery plaintiff had experienced 'radiation of pain from the back,

down the left leg to the toes' and that she had told him 'that she had numbness in her left leg.' However, his diagnosis of plaintiff's condition was that she 'is suffering from the sequelae of a percutaneous cordotomy and she has what I call a post-laminectomy fusion syndrome.' "

The WCAB declared that the "closest any doctor came to testifying about disability in lower or upper extremity was Dr. Otonaz Vaitoz [sic] who had treated plaintiff for many years". His opinion, quoted by the WCAB, was that "she is not able to" do "industrial work" and that she was prevented from working "because of the disability of the left hand, the left leg, and the fact that she cannot work over prolonged periods of time and I mean two or three hours".

The WCAB continued:

"This type of medical evidence coupled with the fact that plaintiff could walk at least one block, dance, and even plant some rose bushes in her yard convince us that she did not meet her burden of proof to establish the industrial loss of use of any legs or arms."[10]

---

[10] Earlier in its opinion the WCAB declared:

"However, even though we find that plaintiff is continually disabled due to her back condition which was aggravated by her work, we must agree with defendant that the referee erred in his finding of industrial loss of use of both legs and one arm.

"The overwhelming weight of the medical proofs points to back disability and any reference to industrial loss of use of lower or upper extremities is so scarce that it is utterly inadequate to support a finding of total and permanent disability."

The WCAB concluded:

"We find that plaintiff continues to be a disabled person due to her back condition and is entitled to compensation for the duration of her disability. However, the record does not support a finding of total and permanent disability within the meaning of the act.

"In our opinion, though totally disabled, she does not qualify for a designation of a totally and permanently disabled person either within the meaning of the act or the tests enumerated by the Supreme Court in *Burke v Ontonagon County Road Commission*, 391 Mich (1974). Plaintiff just has not met her burden of proving that the

The WCAB's recital of Dr. Cullis' testimony and its statement that Dr. Vaitos' testimony was the closest any doctor came to testifying about disability in legs and arm overlooked Dr. Cullis' testimony that "I don't think she can use [her left arm] in the industrial world, to be employed in that world", "I think she has severe problems" regarding the industrial use of her left leg, "I would therefore consider that she is deficient in that regard, for industrial work, the left lower extremity", and the following testimony:

"*Q. [by Martin's attorney]:* All right. I think that the referee would be interested in your opinion as to whether or not there is a substantial loss of use—of industrial use—of these two extremities.

"*A.* I thought I had made that clear. I believe that to be so, yes.

"*Q.* Is that loss of use, in your opinion, permanent?

"*A.* Unfortunately, I think that it will be, yes."

## III

Back problems differ from emphysema or heart disease in that all functions and activities of the body are not affected "more or less in the same manner as it affects the use of the legs". *Triplett v Chrysler Corp, supra,* p 522. A person with emphysema or heart disease is often without energy to function at all. A person with a bad back may be able to work in a rose garden and may have energy for many things even though he or she cannot function in industry.

use of her lower extremities triggers 'pain or other conditions that prevents use of both legs in industry.'

"Accordingly, that part of the referee's decision finding industrial loss of use of plaintiff's lower extremities and left arm shall be reversed, relieving the Second Injury Fund of any liability for differential benefits. In all other respects, the referee's decision is affirmed."

Martin is unable to walk for more than a block. She cannot stand for more than a half hour. Her right hip hurts and she loses control if she stands too long. Her left leg burns if she is standing too long and she cannot put any weight on it. She cannot lift anything substantial with her left hand.[11]

It is of no importance that Martin suffered injuries as a child and as an adult which were not work-related.[12] The WCAB found that she was "continually disabled due to her back condition which was *aggravated by her work"* (emphasis supplied).

Her condition may very well have deteriorated following the termination of her employment and her disability may have become more pronounced as *sequelae* of the three additional operations. These *sequelae* are themselves work-related because they were occasioned by an effort to relieve the disability found to have been aggravated by her work.[13]

If it is thought that the issue of causal relationship between the work-related disability and loss of industrial use is properly before us, it is appar-

---

[11] Dr. Cullis said her grip in her left hand is 12 pounds as compared with her right hand which is 55 pounds.

[12] *See Riddle v Broad Crane Engineering Co,* 53 Mich App 257; 218 NW2d 845 (1974); Larson, Workmen's Compensation Law, § 12.20, pp 3-231–3-265.

[13] *See Oleszek v Ford Motor Co,* 217 Mich 318; 186 NW 719 (1922); Larson, *supra,* § 13.21, pp 3-310–3-319.

This principle is also recognized in the common law:

"A similar group of cases hold the defendant liable for the results of medical treatment of the injured victim. Even where such treatment is itself negligent, because of lack of proper skill or care, recovery for its consequences is permitted. It would be an undue compliment to the medical profession to say that bad surgery is no part of the risk of a broken leg. So long as the plaintiff himself has exercised reasonable care in his selection of a physician, the defendant will be liable for all ordinary forms of professional negligence." Prosser, Torts (4th ed), § 44, pp 278–279.

ent that Martin's continuing inability to use her legs and arm in any meaningful way is a consequence of her work-related back condition (general disability) and continuing deterioration of that condition which may have been aggravated by the efforts to relieve her discomfort.

The central question is whether Martin has lost the industrial use of her legs and arm. If she has, that loss is clearly connected to her general disability found by the WCAB to be work-related. The only post-employment causes that have been suggested are one incident while shopping, manifestly not the cause of her debilitated condition, and the *sequelae* of the operations, clearly related to the back condition found to be work-related.

There is substantial medical evidence that Harriett Martin, as a result of the employment-related aggravation of her back condition, has lost the industrial use of her legs and an arm. The WCAB quoted, with apparent approval, the testimony of both Drs. Cullis and Vaitos who alone testified on the central issue of loss of industrial use. It appears therefore that their testimony was deemed credible. There is no evidence tending to show that Martin has the industrial use of her legs and arm. The evidence that sometime *before* her employment terminated she went dancing and planted some rose bushes does not indicate that after the three post-employment operations she is able to perform employment-related tasks on a regular work schedule.[14]

As set forth in *Burke v Ontonagon County Road Commission, supra,* p 110, it is not necessary that either leg "be injured at all", and therefore it is of

_____

[14] *See Lockwood v Continental Motors Corp,* 27 Mich App 597, 607; 183 NW2d 807 (1970), where the worker could walk or drive an automobile but the Court nevertheless held that he could obtain benefits for loss of industrial use of his legs.

no consequence that Dr. Straschnov could not find any wasting in the legs nor evidence of muscle weakness.

It is undeniable on this record that when Harriett Martin uses one or both of her legs for more than a brief span of time she suffers severe pain that "prevents use of both legs in industry". *Id,* p 114. In these circumstances the WCAB is not at liberty, through selective fact-finding, to substitute its judgment of what constitutes sound public policy regarding payment of differential benefits for loss of industrial use of limbs for the legislatively ordained policy as elucidated in the decisions of this Court. See *Gacesa v Consumers Power Co,* 220 Mich 338; 190 NW 279; 24 ALR 675 (1922), holding that the question becomes one of law for the Court to decide where there is no conflict in the testimony and only one inference can legitimately be drawn from it.[15]

We reverse and remand to the Worker's Compensation Appeal Board for entry of an order affirming the referee.

KAVANAGH, C. J., and WILLIAMS and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

---

[15] "We do not ordinarily consider the rulings of the department on the admissibility of testimony where there is competent testimony to sustain its findings. We should not here if there was any competent testimony to support the findings. But the rejected testimony here is not only undisputed by any testimony in the record or by any legitimate inference which might be drawn from the testimony in the record but it is corroborated by all the testimony in the record bearing on the subject. Where undisputed controlling testimony is improperly rejected by the department of labor and industry and the case is brought here on certiorari our duty is to consider such testimony and apply the proper rules of law to the undisputed facts. We do not weigh and measure conflicting testimony but where there is no conflict in the testimony, where it is all one way, where there is nothing in any way inconsistent in it, where but one inference can legitimately be drawn from it, the question then becomes one of law which upon certiorari we are bound to decide." *Gacesa v Consumers Power Co,* 220 Mich 338, 341; 190 NW 279; 24 ALR 675 (1922).

Coleman, J. *(dissenting)*. Harriett R. Martin has been receiving and will continue to receive disability benefits from Ford Motor Company for a back problem "for the duration of her disability".[1]

The parties ask us to decide whether there were any facts to support the Workmen's Compensation Appeal Board finding that she was *not entitled to* total and permanent disability benefits for the loss of industrial use of her legs and left arm. The Court of Appeals affirmed WCAB.

We affirm.

## I

Plaintiff's medical history is long and complicated. A history of her back problems is:[2]

1. In 1935, plaintiff's back was injured in a toboggan accident. She testified that from then on she had trouble with her back "ever so often" which occasionally "was bad enough to see a doctor", but sometimes she "just went to bed".

2. In 1951, a chiropractic treatment resulted in a "sacrolumbar sprain" so she "went to a bone doctor then and it took three months to clear that up".

3. In 1956, plaintiff was hired by Ford.

4. In 1957 or 1958, she was in an automobile accident. A back examination disclosed an "old rupture of a disc".

5. In March, 1964, plaintiff said, she "gagged on the toothpaste" while brushing her teeth at home and "felt a very severe pain" in her back. Six days later she entered the hospital for removal of a herniated disc. She returned to work on June 19, 1964.

---

[1] Opinion of WCAB.

[2] There also was history of breast surgery and pain between the shoulders caused by bilateral bronchitis.

6. Two months later, on August 5, 1964, plaintiff was in another automobile accident causing severe back pain—"the same kind of pain I had experienced when the disc herniated", she said. A doctor said she had "suffered a spinal injury". She returned to work on October 5, 1964.

7. On the same day, while doing desk work, she said her back started to hurt. She continued to work despite her discomfort until March, 1965. Plaintiff was admitted to a hospital for three weeks, was placed in a body cast and sent home. She wore the cast for three weeks.

8. On April 19, 1965, another back operation (laminectomy) was performed. She returned to work July 1, 1965.

9. In July, 1965, she was asked to do some filing at work and complained of muscle spasms and pain. She arranged for someone else to do the filing. The pain ceased.

10. In October, 1965, plaintiff again was asked to do some filing. She said the spasms and pain recurred. Again, she was excused from filing but the physical problem was said to remain. She was sent to a hospital for three-and-one-half weeks of therapy. On April 22, 1966, the doctor found her improved.

11. On April 29, 1966, plaintiff was planting some rose bushes at home when she suffered another seizure of pain resulting in tenderness "in the low lumbar extensors in the middle left gluteus maximus". She returned to work on May 9, 1966.

12. On May 31, 1966, plaintiff's work at Ford was terminated because her work had been computerized.

13. In June, 1966, plaintiff underwent a spinal fusion.

14. On September 1, 1966, plaintiff suffered another painful incident while shopping.

15. On October 12, 1966, a chordotomy was performed.

16. On November 28 and December 12, 1966 additional chordotomies were performed. Mrs. Martin testified before the referee that a "burning and weakness" of her upper left extremity and a "burning" in her left leg followed the chordotomies.

17. In September, 1967, a myelogram was performed as well as two stellate blocks. She had spinal cortisone injections in three separate places.

On January 28, 1971, the referee found that plaintiff's work at Ford had aggravated a pre-existing back condition. She therefore was entitled to disability benefits for the duration of her back disability. WCAB affirmed. However, the referee also attributed to Ford total and permanent loss of industrial use of her legs and left arm.[3] WCAB reversed this finding. The Court of Appeals affirmed.

## II

WCAB member Yemen's prevailing opinion said that "the referee erred in his finding of industrial loss of use of both legs and one arm".[4] He found that the "overwhelming weight of medical proofs points to back disability and any reference to industrial loss of lower or upper extremities is so scarce that it is utterly inadequate to support a finding of total and permanent disability". Plaintiff "did not meet her burden of proof to establish the industrial loss of use of any legs or arms".

_____

[3] MCLA 418.361; MSA 17.237(361).

Total and permanent disability means "(g) Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm".

[4] Member Krapohl signed the opinion and two others concurred in the result. Two members dissented and one concurred in the dissent.

Three Michigan Supreme Court cases establish a test for determining if a worker is entitled to benefits for permanent loss of the industrial use of his legs:

(1) In *Paulson v Muskegon Heights Tile Co,* 371 Mich 312; 123 NW2d 715 (1963), the worker "was seriously injured in an automobile accident sustained in the course of his employment". His injuries included a punctured bladder and fractured pelvis which resulted in a condition where the use of his legs caused pain.

The worker sought compensation for an industrial use loss. The company said "there can be no loss of industrial use * * * where there is no direct injury to the legs". The Court construed the statute "to mean that permanent and total loss of industrial use, insofar as the facts of this case are concerned, is that leg-connected disabling pain associated primarily with the use of the legs, which is so severe as to make use of the legs in industry practically impossible".

(2) In *Miller v Sullivan Milk Products, Inc,* 385 Mich 659; 189 NW2d 304 (1971), the plaintiff "suffered permanent injury to his left leg when he slipped on some ice while delivering milk". The left leg was industrially useless; it was "undisputed that there is nothing wrong with plaintiff's right leg". He claimed "the economic reality of his incapacitation should control determination of total loss of industrial use of both legs".

The Court did not accept this. It felt the interpretation "would do violence to the statutory intent" by holding that "[w]hen the limb cannot be used industrially simply because of other disabling infirmities * * * the industrial loss of use of such limb has occurred". The Court said "[t]he basic issue in connection with claims of total and permanent disability is one of fact". It affirmed the

WCAB finding that plaintiff "may be totally disabled, but his loss of industrial use is completely confined to one leg, not both".

(3) In *Burke v Ontonagon County Road Commission,* 391 Mich 103; 214 NW2d 797 (1974), the plaintiff "while working * * * slipped and fell into a hole, injuring his left knee". After surgery and years of treatment, he was still "unable to walk without experiencing pain, and without the aid of crutches". Plaintiff's right leg went "on the bum" because "the injury to his left leg caused faulty weightbearing". The WCAB said plaintiff did not prove an industrial use loss. We reversed.

The Court said *"Paulson* and *Lockwood* [5] examine whether loss of industrial use of both legs can have its source in physical injuries which are not leg-related". *Miller* instructed "that loss of industrial use must result from an employment-related injury", a lesson that *Paulson* and *Lockwood* took for granted. For Mrs. Martin's case, *Burke* says there can be total and permanent loss of industrial use if using her legs "triggers an *employment-related injury* * * * in any part of the body * * * that causes pain or other condition that prevents use of both legs in industry". (Emphasis added.)

Other cases help to color in the outline.

The employee in *Koschay v Barnett Pontiac, Inc,* 386 Mich 223; 191 NW2d 334 (1971), sought compensation for a heart attack. WCAB denied the claim, finding "that whatever disability he may still have is not causally connected with his employment". The Court reviewed the case because plaintiff's counsel insisted (as Mrs. Martin's counsel insists) "that no testimony supported the factual findings of the board".

---

[5] *Lockwood v Continental Motors Corp,* 27 Mich App 597; 183 NW2d 807 (1970).

The Court said the question of compensability "became by the proofs a pure question of fact". The board "was entitled to conclude either way; that the claimant's disability was compensable, that is, work-connected, or that it was not". The Court felt it was "plain * * * that the board reached understandable conclusion that there was no proof persuasive enough to sustain plaintiff's burden of making a *prima facie* case of right to an award".

In *DeGeer v DeGeer Farm Equipment Co,* 391 Mich 96; 214 NW2d 794 (1974), the employee had a work-related back injury which required four operations. He could not sit, stand or walk for any length of time without pain. The referee found that plaintiff could not "use his legs long enough or consistently enough to qualify for type of employment which could reasonably be anticipated". The WCAB reversed because "the proofs presented will not support a finding that plaintiff has in fact suffered the industrial loss of use" of his legs as a result of the work-related injury. We remanded for consideration in light of *Burke.*

The worker in *Triplett v Chrysler Corp,* 394 Mich 518; 232 NW2d 168 (1975), had "an occupational respiratory condition which prevents [the] employee from walking any appreciable distance". He was awarded benefits for the loss of industrial use of his legs. The Court reversed saying *Burke* should not be read "to include those cases in which the loss of industrial use of the legs is caused by a generally debilitating disease which, affects bodily functions in much the same way and causes a general decline in those bodily functions".

## III

What does this mean for Mrs. Martin? To recover for the loss of industrial use of her legs and arm, she must establish a relationship between

that loss and her employment injury. Her work at Ford aggravated a pre-existing back injury for which she already is being compensated by defendant. However, the back was injured again after her employment ended. She underwent a series of operations after her employment ended. Prior to the last day of work and after the "strain" said to have been caused by filing (the one "aggravating" trauma attributed to Ford among the eight injuries to the back), plaintiff suffered a nonwork-related injury while planting rose bushes. Her burden was to show that the *work-related* aggravation resulted in the loss of industrial use of her legs or a leg and an arm.

Like the plaintiff in *Koschay,* Mrs. Martin did not carry the burden. A majority of the WCAB felt "she does not qualify for a designation of a totally and permanently disabled person either within the meaning of the act or the tests enumerated * * * in *Burke"*. She "just has not met her burden". We agree.

We wish the WCAB majority opinion were more descriptive. However, it is difficult to demonstrate a negative, to show what proof was missing. It is clear that the majority was unconvinced by plaintiff's proofs which failed to make the required link between the work-related aggravation and the claimed loss of industrial use.

The "basic issue in connection with claims of total and permanent disability is one of fact". The WCAB findings of fact are conclusive if there is no fraud. We accept them and affirm.

Fitzgerald and Ryan, JJ., concurred with Coleman, J.